No. 32,315

THE FIRST TRUST COMPANY OF WICHITA, Trustee of the Estate of Gracie Varney, Deceased, *Appellant,* v. DR. FRANKLIN VARNEY, *Appellee.*

(45 P. 2d 582)

Opinion filed June 8, 1935.

*M. P. Shearer,* of Wichita, for the appellant.

*H. L. Kelly,* of Peoria, Ill., for the appellee; *Opal E. Kelly,* of Peoria, Ill., of counsel.

The opinion of the court was delivered by

SMITH, J.: This was an action whereby the plaintiff asked for construction of a will. Judgment was for defendant. Plaintiff appeals.

The facts are admitted. Gracie Varney died testate on June 8, 1933. The portions of her will with which we are concerned are as follows:

"ITEM EIGHT. All the rest, residue and remainder of my estate, real, personal, and mixed, of which I may die possessed, or to which I may be entitled, and estates in reversion, remainder or expectancy, I hereby give, devise and bequeath to the First Trust Company of Wichita, Kansas, as trustee in trust, and vest in said trust company the title thereto, including all of my interest in the following-described real property in Sedgwick county, Kansas . . . being the same property leased by me to the Kansas National Bank of Wichita, Kansas, for a period of ninety-eight (98) years, from March 1, 1918, at a monthly rental of one hundred and seventy-five ($175) dollars per month,

which lease has been assigned to the First National Bank in Wichita, Kansas, and upon which property the said the First National Bank in Wichita has erected a portion of its building, together with all my rights in and to the said property, and the said lease, and a contract of sale, whereby I have agreed to sell and convey said real property to the First National Bank in Wichita, Kansas, for forty thousand ($40,000) dollars, subject to said lease, which shall merge at my demise in a deed, when duly delivered by the Fourth National Bank in Wichita, Kansas, (the escrow holder) to the First National Bank in Wichita, Kansas, upon completion of the payment of the consideration of forty thousand ($40,000) dollars; giving and granting unto the said, the First Trust Company of Wichita, Kansas, its successors and assigns, the full right, power and authority to collect all of the rentals from the said premises that may be due and payable under the said lease, and the balance of the said consideration of forty thousand ($40,000) dollars, which may be due and payable, and to invest said monies in safe and conservative securities (either bonds of a city of the first class of the state of Kansas, or bonds of the government of the United States of America, or bonds secured by first mortgages on land in Kansas), and dispose of all of the net income of the said money, as hereinafter set out; the said devise and bequest herein made being in trust for the purposes hereinafter named:

"A. I hereby expressly will and ordain that said trustee shall pay unto Dr. Franklin T. Varney, of Nauvoo, Illinois, the sum of seventy-five ($75) dollars per month during his life time.

"B. I, the said testatrix, having in mind the worthy and needy poor of the city of Wichita, and being moved by a spirit of broad philanthropy and good will, do hereby create this trust, to be known and called the Varney Charitable Fund for the worthy and needy poor of Wichita, and the net income of said money shall be used for the benefit of said worthy and needy poor of the city · of Wichita, as the said city is now constituted, or may hereafter be bounded, from time to time, and this trust is made for such worthy and needy poor without regard to age, sex, race, color or creed, for all time, subject to the above bequest to Dr. Franklin T. Varney."

At the time of the death of Mrs. Varney she was making her home with Dr. and Mrs. Franklin T. Varney in Illinois. At that time the estate consisted principally of a tract of real property in Wichita. This tract was under lease to the First National Bank in Wichita for a period ·of 98 years from March 1, 1918, at a net monthly rental of $175. About three years prior to her death Mrs. Varney entered into a contract for the sale of this real property to the First National Bank in Wichita, Kansas, for $40,000, a part of which was paid in cash, a part to be paid in monthly payments, and the balance to be paid to her estate after her death. The 98-year lease was to remain in effect and the rental to be paid until Mrs. Varney's death and the payment of the balance of the purchase price. Soon after this contract of sale was made the will above set

out was made and executed by the testatrix on October 13, 1930. After the death of Mrs. Varney, the First Trust Company, as ancillary administrator with the will annexed, completed the sale to the First National Bank in Wichita, and collected in cash the balance remaining unpaid on the contract. At the time of the closing of the estate there was turned over to the First Trust Company, as trustee, $24,000 in United States government bonds bearing 3⅛ per cent interest (which had been purchased from the proceeds of the sale of the real property) and $4,386.53 in cash. This constitutes the trust estate.

Some time elapsed between the death of the testatrix and the qualification of the trustee. The trustee invested the proceeds of the estate in United States government bonds. They bring in a little less than $900 a year. This amount is insufficient to make the payments which the will provided should be made to Doctor Varney.

The question arose as to whether the payments to Doctor Varney could be made from the principal of the estate when the interest is insufficient to make them.

An additional question is whether the payments to Doctor Varney should commence at the death of testatrix or at the time of qualification of the trustee.

Prior to the institution of this action there were negotiations between the trustee and Doctor Varney as to the advisability of paying to Doctor Varney a lump sum in settlement of the monthly payments provided for in the will. The trustee is willing to pay to Doctor Varney a lump sum out of the corpus of the estate based upon the cost of an insurance annuity payable to a man of the age of Doctor Varney for the remainder of his life. The trustee believes it is to the best interests of the estate to do so but doubts whether it has power to make such a settlement.

All of these questions were raised by the pleadings.

The court heard the case and rendered judgment that the $75 a month should start from the date of the death of the testatrix, and that the income from the trust estate should first be used to make these payments, and if insufficient the balance should be paid out of the corpus of the estate. The court further approved the proposed settlement of the legacy to Doctor Varney in the amount of $7,-473.60 and authorized the trustee to enter into such a settlement. From that judgment this appeal is taken.

In considering this case we shall follow a well-established rule;

that is, that the will must be examined from its four corners with the idea of ascertaining the intention of the testatrix. It is her intention which must control.

The eighth item of the will directed what should be done in case the real property should be a part of the estate when the testatrix died. It then provided as to how the funds should be invested. The item then directs that the income from the investments should be disposed of as thereinafter set out. The next clause makes an unequivocal bequest to Doctor Varney of $75 per month during his lifetime. The next item speaks of a trust that is created by the will and provides that the net income of the fund shall be used for the benefit of the needy poor of Wichita.

It will be noted the will provides specifically that this shall only be paid from the net income of the fund and is subject to the bequest to Doctor Varney. Had the testatrix intended the payments to Doctor Varney should be made out of income only surely she would have used the same language that was used in making provision for the poor. We shall gather the intention of the testatrix as nearly as possible from the written words of the will. We also call to our assistance, however, the surrounding facts and circumstances. The testatrix had spent her last days in the home of Doctor Varney. She evidently entertained a kindly feeling toward him. It is a fair assumption that she considered his welfare to be more important than that of the poor for whom she was providing.

When all these things are considered we do not have any difficulty in reaching a conclusion that the testatrix intended Doctor Varney should have $75 a month for the balance of his life, whether the income of the estate was sufficient to pay it or not.

A similar result was reached in *Pierrepont v. Edwards*, 25 N. Y. 128. In that case a testator devised his estate to trustees with instructions to pay an annuity to one for life and balance of income to others. The estate did not yield enough income to pay the first annuity. It was held that the direction to pay out of income was only demonstrative and that annuitant was entitled to have deficiency paid out of corpus of the estate.

In *Smith v. Fellows*, 131 Mass. 20, an annuity was given to one to be paid from the income of all testator's property. The estate was devised after payment of debts and legacies. The court held that the words "to be paid from the income of my property" imposed a charge upon the entire estate. The element which all the

authorities we have examined have in common is that the intention of the testator was allowed to govern.

The conclusion that has been reached on the above question disposes in a large measure of the question as to whether the payments to Doctor Varney should begin at the death of the testatrix or not until the appointment of a trustee. The trust company argues that if the payments were to be made from income alone, then they should not start until there was an income. The conclusion that these payments should be made from the corpus of the estate, where the income is not sufficient to make them, does away with that argument. The authorities hold an annuity, in the absence of a provision to the contrary, starts from death of testator.

In the case of *Matter of Sanfield*, 135 N. Y. 292, where A was given the income from $20,000 for life by will and the estate given in trust to a trust company, which was also named as executor of the will, the court held that A was entitled to interest on the $20,000 from the date of the death of the testator.

See, also, *Woods v. Gilson*, 178 Mass. 511; *Eichelberger's Est.*, 170 Pa. St. 242.

There remains to be considered the action of the trial court in approving the proposed settlement whereby the trustee agreed to pay Doctor Varney a lump sum sufficient to purchase an annuity of $75 a month for a man at the age of Doctor Varney on a 5 percent basis. The trial court held that such a settlement is necessary to the preservation of the estate and the carrying out of the intention of the testator. Here we must resort to what was said heretofore in this opinion—that the intention of the testator must govern. We will not decide that there could never be a case where the provisions of the will might not be made to yield so as to best accomplish the benefit of all concerned. We merely hold that this is not such a case. The intention of the testator was to make sure that Doctor Varney had $75 a month, no matter what vicissitudes life held for him. To approve the payment of a lump sum to him, as contemplated in this settlement, would be to thwart the intention of the testator rather than to carry it out.

The judgment of the trial court, directing the payments to Doctor Varney to be made out of the corpus of the estate when the income is not sufficient to make them, and directing the payment to start from the time of the death of testator, is affirmed; that part of the judgment approving the lump-sum settlement is reversed.