[No. 27926.  Department One.  August 9, 1940.]

JULIUS C. JOHNSON, *Plaintiff*, v. MARTHA E. McCLURE
*et al., Appellants,* JAY G. McCRARY, *as
Administrator, Respondent.*[1]

[1]Reported in 104 P. (2d) 962.

*Graves, Kizer & Graves,* for appellants.

*R. E. Lowe* and *Floyd Underwood,* for respondent.

SIMPSON, J.—Plaintiff instituted an action of interpleader and paid into court the proceeds of the real estate which he had held in trust under the terms of a will made by Eli C. Weeks. The complaint named the heirs of the testator, along with the administrator of the testator's wife's estate, as defendants. A trial to the court resulted in the entry of a decree awarding to Jay G. McCrary, as administrator of the estate of the testator's wife, Jennie Weeks, a portion of the sum paid into court. The heirs of the testator, who were cross-complainants in the trial below, have appealed from that decree.

The facts are these: May 23, 1925, Eli C. Weeks executed a will, which, omitting certain formal portions, reads as follows:

"First, I direct that my body be decently buried with proper regard to my station and condition in life and the circumstances of my estate.

"Second, I direct that my executor hereinafter named, as soon as he has sufficient funds in his hands, pay my funeral expenses and all my just debts.

"Third, I give, devise and bequeath all my personal property of every kind and nature and all my real estate situated in the Town of Almira, Lincoln County, Washington, unto my wife Jennie Weeks.

"Fourth, I give, devise and bequeath to the executor of this, my last Will and Testament, hereinafter nominated and appointed in Trust, to be held and possessed by him, for and during the natural life of my beloved wife Jennie Weeks, all my separate real estate situated in Sections, Twenty-nine (29) and Thirty-two (32),

Township Twenty-eight (28), North of Range Thirty-one (31) E. W. M., Lincoln County, Washington.

"And I do hereby order and direct that during the continuance of the said Trust Estate, as aforesaid, Five Hundred Dollars ($500.00) of the net income from said real estate shall be paid annually to my wife Jennie Weeks. The remainder if any, of said net income is to be used in liquidating the indebtedness against said real estate until that is fully paid and after that the whole income is to be annually paid to my wife Jennie Weeks.

"In the event that the income from said real estate is insufficient to make the annual payment of Five Hundred Dollars ($500.00) to my wife then it is my wish and desire and I hereby authorize my executor hereinafter named to hypothecate the said real estate and raise sufficient funds to make such annual payments.

"I further direct that after the decease of my wife, Jennie Weeks, my executor hereinafter named shall as soon as practical sell said real estate and divide the proceeds in equal parts among my brother John T. Weeks or his heirs, and my sisters, Louisa J. Crabb and Martha E. McClure of Larmar, Mo. or their heirs.

"Fifth, Should I survive my wife Jennie Weeks, I will and direct that all my property both personal and real of whatsoever nature and wheresoever situated, after my decease be sold by my executor hereinafter named and the net proceeds thereof be equally divided among my brother John T. Weeks, or his heirs, and my two sisters, Louisa J. Crabb and Martha E. McClure of Larmar, Mo. or their heirs.

"Sixth, I hereby constitute, nominate and appoint Julius C. Johnson and in the event of his decease the then acting Cashier of the Almira State Bank, Almira, Wash., the executor of this my Last Will and Testament, to act without bonds, hereby revoking all former wills made by me and ratifying and confirming this, and no other, to be my Last Will and Testament."

Mr. Weeks died September 26, 1925, and his will was admitted to probate October 14, 1925. Julius C. Johnson was appointed trustee in the will and qualified as such.

Jennie Weeks died September 29, 1936, and Jay G. McCrary was appointed administrator of her estate.

Subsequent to her death, the trustee of the Eli C. Weeks estate sold the real property mentioned in the will for the sum of $6,239.63, and paid it into court subject to the claims of the heirs of Mr. and Mrs. Weeks.

During the time trustee Johnson had charge of the property left by Eli C. Weeks, he was unable to pay the annuity to Mrs. Weeks, and deficiencies accumulated until at the time of her death the payments were in arrears in the sum of $3,725. Judgment for that amount was entered against the fund paid into court.

The first question presented is whether, upon failure of income to pay the annuity, the deficit may be supplied from the corpus of the estate.

Appellants maintain that a proper construction of the will indicates an intention on the part of the testator to limit the source of the annuity payments to the net income of the estate and the amount possible to borrow thereon, and that the corpus of the estate was not to have been depleted in order to pay the amounts to his surviving widow.

Respondent contends that the provisions of the will manifest an intention on the part of the testator to provide an annuity of five hundred dollars to his widow, which must be paid first, from the net income of the estate, or second, from the corpus of the estate, should the income fail. Respondent maintains that the will creates a demonstrative legacy to which specific and general legacies must give way.

"A 'specific legacy' is a bequest of a particular thing, or specified part, of the testator's estate, which is so described as to be capable of identification from all others of the same kind. The testator must intend that the legatee have the very thing bequeathed, not merely a corresponding amount in value or like property." 69 C. J. 919.

"A 'general legacy' is one which does not direct the delivery of a particular thing or part of the estate, as distinguished from all others of the same kind and capable of precise identification, or the payment of money out of a particular portion of the estate; the legacy may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing, or things." 69 C. J. 921.

"A 'demonstrative legacy' is one payable out of a particular fund primarily, but, if the fund designated fails, out of the general assets. The legacy is one of quantity; two elements are necessary: (1) It must be an unconditional gift in the nature of a general legacy, and (2) the legacy must indicate the fund out of which it is payable. For a legacy to be treated as demonstrative, the fund must be in existence at the time of the testator's death." 69 C. J. 922.

In order to solve the questions presented by appellants and respondent, it is necessary to examine the will in its entirety, as well as the facts and circumstances surrounding the testator at the time the will was executed.

The direction of our inquiry is indicated by Rem. Rev. Stat., § 1415 [P. C. § 10042], which reads:

"All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them."

The intention of the testator is a predominant factor to be determined. In other words, we must ascertain the objects sought to be accomplished by the maker of the will. In so doing, we must gather the meaning from an examination of the writing as a whole viewed in the light of the surrounding circumstances concerning the testator, the estate of his property, the condition of his family, and the persons named as devisees. *In re Lotzgesell's Estate,* 62 Wash. 352, 113 Pac. 1105; *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6; *In re*

*Hochbrunn's Estate,* 138 Wash. 415, 244 Pac. 698, 49 A. L. R. 7; *Cotton v. Bank of California,* 145 Wash. 503, 261 Pac. 104; *In re Doepkes' Estates,* 182 Wash. 556, 47 P. (2d) 1009; *Bank of California v. Turner,* 193 Wash. 270, 74 P. (2d) 987; 69 C. J. 59, 63, §§ 1119 and 1120.

█ Did the testator intend, in making provisions for the support of his wife, to provide the definite sum of five hundred dollars per year, to the exclusion of others named in the will, and was it his desire that the corpus of the estate should be invaded in order to provide the support provided for her?

One of the first cases touching upon this question is *Pierrepont v. Edwards,* 25 N. Y. 128 (1862). In that case, it appears that the testator left in trust an estate consisting of personal and real property of considerable value. The direction of the trust provided as follows: (a) to pay to the widow eight thousand dollars per annum; (b) if there were no child or children, to pay to the widow seven thousand dollars; (c) the residue of the income to be paid to a brother and two sisters; and (d) after the death or remarriage of the widow, the trustees were to pay the income to any surviving children, or if none, to the brothers and sisters, and upon the death of the brothers and sisters then to their children.

Passing upon the question presented, the court said:

"The leading principle of the cases is, that when the testator bequeathes a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund. . . .

"If we were to hold that the widow was to have nothing, less the property or securities in which the estate happened to be invested yielded income, and that she was not to be paid the full seven thousand dollars per

annum, directed to be paid to her, unless the investments should happen to yield that sum, we should, in my opinion, sacrifice the substance and primary intention of the will for the sake of an incidental provision, inserted for the convenience of the estate, and not intended to limit or control, or to render uncertain or conditional, the provision in her favor."

The reasoning of that case appeals to us as an adoption of the proper principle to be applied to cases of like nature.

Another case of value in this regard is *Smith v. Fellows*, 131 Mass. 20 (1881). The will construed in that case disclosed that the testator gave to his widow the use and improvement of certain real estate, together with his horse and carriages, and an annuity of one thousand dollars, " 'the same to be paid from the income of my property;' " and devised to his daughter the residue of his estate, real and personal, after payment of debts, expenses and " 'the legacies hereinbefore mentioned.' "

The court held that the annuity to the widow was a charge against the whole estate. In deciding the case, it was said:

"It is a question of the testator's intention, and the intention to give to this annuity the nature of a specific legacy, payable only out of income, must be clearly established. The manifest purpose of the testator here is to make ample and certain provision for his wife during her life. To that end, he gives her the use and improvement of his house and land in Fall River, and of a cottage lot in Barnstable, for life, and of his pew, together with his horse and carriages, and then gives to her 'one thousand dollars per year during her lifetime, the same to be paid from the income of my property.' It is the gift of a fixed sum, which is to be paid annually, and which is not made contingent or dependent upon the income of any specific portion of his property. There is no particular fund set apart for its pay-

ment. The income of the whole estate is charged, and the residue bequeathed to a daughter is described as that which remains after the payment of debts and expenses, and the payment of the legacies mentioned in the will. In view of all these provisions, the fact that the phrase 'to be paid from the income of my property' is added to the bequest does not show a clear intention to make this legacy specific. It is rather the expression of a wish that the payment should be made from the income in case the same should be sufficient. The estate was mostly real property, and it is not to be gathered from the will that the testator intended that his wife should be without means of support, if for any reason the income should fail and the property become unproductive. The estate might still be of great value, and the result in such case would benefit the daughter, by increasing her reversion at the expense of the provision for the wife's support. The annuity given to the wife was no more a specific legacy than a legacy charged generally upon real estate. It is rather in the nature of a demonstrative legacy, which has a prior right to payment out of the fund charged, but is payable at all events out of the principal of the estate if the fund proves inadequate."

The principle announced in the two cases cited has received the approval of other courts in recent years.

The will which was the subject of construction in *First Trust Co. v. Varney,* 142 Kan. 93, 45 P. (2d) 582, directed the trustee

" ' . . . to invest said monies in safe and conservative securities . . . and dispose of all of the net income of the said money, as hereinafter set out; the said devise and bequest herein made being in trust for the purposes hereinafter named:

" 'A. I hereby expressly will and ordain that said trustee shall pay unto Dr. Franklin T. Varney, of Nauvoo, Illinois, the sum of seventy-five ($75) dollars per month during his life time.

" 'B. I, the said testatrix, . . . do hereby create this trust, to be known and called the Varney Charitable Fund for the worthy and needy poor of Wichita,

and the net income of said money shall be used for the benefit of said worthy and needy poor of the city of Wichita, . . . subject to the above bequest to Dr. Franklin T. Varney.'"

The opinion stated:

"It will be noted the will provides specifically that this shall only be paid from the net income of the fund and is subject to the bequest to Doctor Varney. Had the testatrix intended the payments to Doctor Varney should be made out of income only surely she would have used the same language that was used in making provision for the poor. We shall gather the intention of the testatrix as nearly as possible from the written words of the will. We also call to our assistance, however, the surrounding facts and circumstances. The testatrix had spent her last days in the home of Doctor Varney. She evidently entertained a kindly feeling toward him. It is a fair assumption that she considered his welfare to be more important than that of the poor for whom she was providing.

"When all these things are considered we do not have any difficulty in reaching a conclusion that the testatrix intended Doctor Varney should have $75 a month for the balance of his life, whether the income of the estate was sufficient to pay it or not."

In support of its holding, the court cited the cases of *Pierrepont v. Edwards, supra,* and *Smith v. Fellows, supra.*

The same rule was followed in *In re Anderson's Estate,* 143 Misc. 250, 256 N. Y. Supp. 529, in which the will provided:

" 'Eighthly. I hereby direct my said executor and trustee to pay out of the net income of said residuary estate the sum of One hundred and fifty (150) Dollars a month to my said wife Georgina C. Anderson, so long as she shall live or remain unmarried.' "

The court held that when the income from the indicated portion of the testator's estate fell below the amount stated in the quoted clause, the corpus of the

estate might be reached to supply the deficiency. In so holding, the court stated:

"The principle laid down in *Pierrepont v. Edwards* [25 N. Y. 128] has not been criticised or reversed. It is one of the high points in judicial construction that appeals to both heart and mind."

The will considered in the case of *State v. Underwood,* 54 Wyo. 1, 86 P. (2d) 707, throws much light upon the question as to whether the corpus of an estate may be subjected to the payment of annuity. The will considered in that case provided:

" 'I hereby will and bequeath to the State of Wyoming all of my property both personal and real.

" 'From the income I want the following relatives to be beneficiaries:

" 'Frederick W. Higgins, Denver, Colorado, nephew, One thousand (1,000.00) dollars per year.

" 'Ann Devine, . . . and her nephew, Harry Devine, Jr., Two thousand ($2,000.00) dollars per year. When Ann Devine dies, $1,000.00 of the above reverts to the estate, should Harry Devine die or lead a discreditable life the remaining thousand dollars shall revert to the estate.' "

The court held that although, on its face, an annuity is payable only from income, such fact is not conclusive if, from a consideration of the whole will, a contrary intention appears to have been in the mind of the testator, and that, if an annuity is made an unlimited and indefinite charge upon income, resort may be had to the corpus of the estate if the income is insufficient; that by an unlimited and indefinite charge is meant that the charge is not limited to the annual income during the life of the annuitant; and that an annuity is a legacy in the broad sense of the term and must be construed in the same way.

Accord, *Moore v. Alden,* 80 Me. 301, 14 Atl. 199, 6 Am. St. 203; *Dorsey v. Dodson,* 203 Ill. 32, 67 N. E. 395.

Appellants have cited the following cases in which provision for annuities, somewhat similar to the one provided in this will, were under consideration. *Veazie v. Forsaith,* 76 Me. 172; *Delaney v. Van Aulen,* 84 N. Y. 16; *Kearnes v. Gray,* 173 N. C. 555, 92 S. E. 606; *Skinner v. Taft,* 140 Mich. 282, 103 N. W. 702; *Einbecker v. Einbecker,* 162 Ill. 267, 44 N. E. 426; *Irwin v. Wollpert,* 128 Ill. 527, 21 N. E. 501; *DeHaven v. Sherman,* 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745; *Comstock v. Comstock,* 78 Conn. 606, 63 Atl. 449; *Houston Land & Trust Co. v. Campbell,* 105 S. W. (2d) (Tex. Civ. App.) 430.

Some of those cases are not in point, others may be distinguished. In a portion of the cases just cited, the court held that, upon failure of income to pay the annuities, the corpus of the estate could not be made available to pay the deficiency. Our study of all the cases leads us to the conclusion that those from which we have quoted have adopted the better rule and reflect the weight of authority.

The testator had no children, his wife had the first call upon him for support during his lifetime, and was the first to be remembered as the natural object of his bounty in disposing of his property.

Applying the rules to which we have referred, we hold that it was the clear intention of the testator to provide for the care of his widow by the payment of five hundred dollars each and every year during the time of her life, even though the total of the sums provided would exhaust the entire estate. The will provided a demonstrative legacy in favor of Mrs. Weeks. The annual payments belong to her and were payable at the end of each year from the time of the testator's death. *Jesseph v. Westerberg,* 94 Wash. 602, 162 Pac. 1004; *Davis v. Brown,* 112 Wash. 121, 191 Pac. 1098.

The legacy vested in Jennie Weeks, and did not lapse by her death; hence, her heirs were entitled

134

to the amount that was due at the time she died. *In re Turner's Estate,* 191 Wash. 145, 70 P. (2d) 1059; *In re Verchot's Estate,* 4 Wn. (2d) 574, 104 P. (2d) 490.

The judgment of the trial court was correct and is affirmed.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.

