[No. 28038.   Department Two.   January 18, 1941.]

THE BANK OF CALIFORNIA, N. A., *Appellant,* v. ILENE GRIEB AGER *et al., Respondents and Cross-appellants,* ELIZABETH FINCH ABRAMS *et al., Appellants.*[1]

[1] Reported in 109 P. (2d) 548.

180

*Bogle, Bogle & Gates* and *Shorts & Hartson,* for appellants.

*G. E. Peterson* and *Arthur C. Bannon,* for respondents and cross-appellants.

MILLARD, J.—Prior to the execution of his last will, August 19, 1932, Edward C. Finch, who died September 25, 1933, was divorced from his first wife. There were born of that marriage three children, viz., Elizabeth Finch Abrams, Louise Finch Travers, and Margaret Finch. November 10, 1928, Finch married Gladys Grieb, who was his wife at the time of his death. No children were born of this second marriage. Finch's will, in which the Bank of California, N. A., was named executor and trustee, was probated in King county, October 3, 1933. By decree of September 5, 1935, the trust estate, which was the separate property of Finch, was distributed to the bank as trustee.

Gladys Grieb Finch, second wife of Edward C. Finch, died April 28, 1938.

Finch bequeathed: One dollar to his daughter Margaret, one thousand dollars to his sister, five hundred dollars to each of the three daughters of his sister, and certain personalty to his daughters Elizabeth and Louise. He bequeathed to his wife, Gladys Grieb Finch, one thousand dollars payable to her as soon as possible after the testator's death. He directed that, within one month after his death and monthly thereafter until the residue of his estate was transferred to the trustee of the estate, the executor pay to his wife five hundred dollars for her maintenance and support during such period. The monthly payments of five hundred dollars were to be from the income of the estate, but, if the income was not sufficient, the payments were to be made out of the corpus of the estate. Finch bequeathed to his brother, H. K. Finch, one hundred dollars monthly during the period subsequent to one month after the death of the testator until the estate was transferred by the executor to the trustee.

Article XIII of the will recites that, on November 8, 1928 (which was two days prior to the marriage of Finch to Gladys Grieb), Gladys Grieb and Finch entered into an antenuptial agreement,

" . . . and the provisions in this my Last Will and Testament for the establishment of the trust and the payment to her of amounts out of the corpus and/or income of the trust estate, are all made by me in pursuance of and for the purpose of carrying out, with possible additions for her benefit, my obligations under said antenuptial agreement, and are intended to be in full satisfaction of all my obligations under said antenuptial agreement."

Article XIV, under which all of the residue of Finch's estate is devised and bequeathed to the Bank

of California, National Association, as trustee, is subdivided into paragraphs, one to thirty-seven, inclusive. Paragraph two directs the trustee to pay to Gladys Grieb Finch, "for and during the term of her natural life," five hundred dollars monthly, and such payments are defined as "regular payments."

Paragraphs three and five provide that, in the event Mrs. Finch requires, during the probate or trust periods, as a result of serious illness, medical, surgical, nursing, or hospital care, the cost of which, in addition to her normal living costs and expenses, requires disbursement on her part in excess of the "regular payments," the trustees shall pay to her such additional amounts as, "in the sole discretion of the Trustee, are necessary and proper to enable my said wife to meet and pay such additional costs and expenses."

Paragraphs four and six provide that, in the event of the death of Mrs. Finch during the probate or trust periods, respectively, the executor or trustee, as the case may be, shall pay all such "unpaid costs and expenses of the last sickness, funeral," and interment of Mrs. Finch as in the sole discretion of the trustee are fair, reasonable, and proper.

Paragraph seven defines payments made by the trustee to the testator's wife, under the provisions of paragraphs three and five, as "emergency payments."

Paragraph eight makes each calendar year an "income period" for accounting purposes. That paragraph further provides that, on January 15th of each year, the trustee shall "compute the amount of the net income of the trust estate during the preceding income period."

Under paragraph nine, the "regular payments" to Mrs. Finch under paragraph two are made a first charge against the trust estate "prior and superior to the rights of any other beneficiary."

Paragraph ten defines as "excess income" the net income, if any, remaining after payment to Mrs. Finch of "regular payments" and "emergency payments," and directs the trustee to pay such excess income, if any, to the beneficiaries entitled to receive the same in monthly installments, as provided in paragraph eighteen.

Paragraph eleven provides that, out of the "excess income" for any "income period," the trustee shall pay (first) to the testator's brother, H. K. Finch, "if he be then alive," twelve hundred dollars, and if such "excess income" be less than twelve hundred dollars, all of such "excess income" shall be paid to H. K. Finch, the testator's brother; and shall pay (second) the remainder, if any, if such remainder does not exceed twice the amount paid to Mrs. Finch as "regular payments" and/or "emergency payments" during such "income period," in equal shares to his daughters Elizabeth Finch Abrams and Louise Finch Travers. If such remainder exceeds twice the amount paid to Mrs. Finch as "regular payments" and/or "emergency payments" during such "income period," the trustee shall pay the remainder in equal shares to Elizabeth Finch Abrams, Louise Finch Travers, and Mrs. Finch. Paragraph eleven also provides that, if Mrs. Finch remarried, her right to receive "excess income" for any "income period" shall cease from and after her remarriage; and thenceforth any "excess income" over and above that paid to the testator's brother, H. K. Finch, shall be paid in equal shares to the testator's daughters Elizabeth Finch Abrams and Louise Finch Travers. ·

Paragraph twelve provides that payments to the testator's brother, H. K. Finch, "shall cease and terminate immediately upon his death."

Paragraph thirteen, which reads as follows, provides

that, after the death of the last survivor of Mrs. Finch and the testator's brother, all the net income of the trust estate, computed as in paragraph eight, shall be paid by the trustee in equal shares to the testator's two daughters Elizabeth and Louise:

"From and after the death of the last survivor of my said wife and my said brother, all the net income of the trust estate computed as aforesaid shall be by the Trustee paid as follows: One-half thereof to my said daughter, Elizabeth, and one-half thereof to my said daughter, Louise."

Paragraph fourteen provides that, from and after the death of his daughter Elizabeth, the payments of net income which she would be entitled to receive, if living, "shall be paid per stirpes to her descendants."

From and after the death of the testator's daughter Louise, the payments of net income, which she would be entitled to receive, if living, are to be paid, under the provisions of paragraph fifteen, *per stirpes* to the descendants of Louise.

Paragraphs sixteen and seventeen provide that, in the event of the death of either of his two daughters (Louise and Elizabeth), and all her descendants, during the life of the trust, then the net income payable to her shall be paid to the testator's other daughter (Louise or Elizabeth, as the case may be), "for and during the term of her natural life, and thereafter per stirpes to the descendants of my said daughter . . ."

Paragraph eighteen, reading as follows, provides that when, on January 15th of any year, the amount of the "excess income" for any "income period" to be paid to any beneficiary has been determined, such amount shall be paid during such year to *such beneficiary in* twelve equal *monthly* installments:

"When, on January 15 of any year, the amount of the 'excess income' for any 'income period' to be paid to any beneficiary has been determined, such amount shall be paid during such year to such beneficiary in twelve (12) equal monthly installments as near as may be."

Paragraph nineteen, which reads as follows, provides that the trust shall terminate on the date when there shall die the last survivor of Mrs. Finch, the testator's brother, the two daughters (Elizabeth and Louise), and the children of his daughters *born prior to the date of the death of the testator,* and names as distributees the then living descendants of each of his two children:

"The final distribution date of the trust estate shall be that date on which shall occur the death of the last survivor of my said wife, my said brother, my said daughters, Elizabeth and Louise, and the children of my said daughters born prior to my death. As soon as possible after said final distribution date, the Trustee shall divide the trust estate, including any accumulated net income, into as many equal parts as there may be then living children of my said daughters born after my death, and deceased children of my said daughters (whether born before or after my death) leaving descendants them surviving and then living. Forthwith upon making said division, the Trustee shall pay one of such parts to each such then living child of my said daughters, and one of such parts per stirpes to the then living descendants of each such deceased child of my said daughters, and thereupon the trust shall terminate."

Paragraph twenty, reading as follows, provides for distribution of the remainder of the estate to charities in the event of failure of issue of the testator's two daughters, under paragraph nineteen, quoted above:

"If on the final distribution date mentioned in Paragraph 19 of Article XIV hereof my said wife and my

said brother and my said daughters, Elizabeth and Louise, and all children of my said daughters, Elizabeth and Louise, and all descendants of such children shall be dead, then the Trustee shall forthwith, in its sole, absolute and uncontrollable discretion, select and designate two non-profit institutions within the State of Washington, then engaged in the support or education of orphans or indigent children, and shall make final distribution of the trust estate, including any accumulated income, in equal proportions to such institutions so selected and designated by the Trustee, and thereupon the trust shall terminate."

Paragraph twenty-one provides, among other things, in connection with powers of the trustee, that the trustee shall "be guided by the fact that the prime purpose of this trust is to provide an income for the support of the beneficiaries herein named."

The testator's brother, H. K. Finch, died during the probate period; hence, during the trust period, which commenced September 5, 1935, the only persons entitled to receive "excess income" were Mrs. Finch and the testator's two daughters Elizabeth and Louise.

The total distribution to Mrs. Finch for the first "income period," from the date of decree of distribution (September 5, 1935) to December 31, 1935, of regular payments of five hundred dollars monthly and emergency payments, amounted to $3,707.55. The remainder of income for that income period was $7,105.45, which was not sufficient to pay each of the two daughters as much as the aggregate of regular and emergency payments received during the period by Mrs. Finch; consequently, only the two daughters shared the excess income during 1936.

The total income for the income period of 1936, computed January 15, 1937, amounted to $40,462.70. During 1936, Mrs. Finch received regular payments amounting to six thousand dollars and emergency pay-

ments aggregating $3,362.06, or a total of $9,362.06. The trustee advanced $429.13, the cost of shipping furniture, for the account of the two daughters. Under the plan provided by the will, $13,273 excess income was paid during 1937 to each daughter and $4,125.51 to Mrs. Finch. That is, the daughters received, including cost of shipping furniture in 1936, $26,975.13. Mrs. Finch received, during 1937, six thousand dollars in regular payments and excess income of $4,125.51, a total of $10,125.51, or $843.79 monthly. This shows that the more Mrs. Finch received in emergency payments the less excess income she could receive the succeeding year.

The total net income for the income period of 1937, computed January 15, 1938, was $34,485.84. During 1937, no emergency payments were made to Mrs. Finch (she did not request any), who received only six thousand dollars of regular payments. A payment of $76.25 by the trustee to the University of California was voluntarily refunded by Mrs. Finch, who preferred to pay that charge herself instead of having the trustee deduct the amount from her excess income the ensuing year. From this, it will be seen that on January 15, 1938, when excess income for 1937 was computed, Mrs. Finch was entitled to receive $5,495.28 and each daughter was entitled to receive $11,495.28, payable in monthly installments to each of these three beneficiaries during 1938, provided each lived to receive such monthly installments.

During 1938, Mrs. Finch would have had a monthly income, including the regular payments monthly of five hundred dollars, of $957.94. Mrs. Finch received, prior to her death April 28, 1938, four of these monthly installments, aggregating $3,831.76. That is, Mrs. Finch received a total of two thousand dollars, in four monthly regular payments of five hundred dollars and

$1,831.76, or four monthly payments of $457.94, of 1937 excess income. Upon the death of Mrs. Finch, there remained unpaid $3,663.52 of 1937 excess income, which the trustee had set aside on the theory that the beneficiary would live during the succeeding year of 1938. The trustee ceased regular payments of five hundred dollars monthly for Mrs. Finch and also withheld the remainder of the 1937 excess income. The executors of the estate of Mrs. Finch, who died April 28, 1938, insisted that the trustee should pay to them the eight remaining installments of $457.94 monthly of 1937 excess income.

The trustee instituted this action to ascertain to whom the remainder ($3,663.52) of the 1937 excess income should be paid. The executors of the estate of Gladys Grieb Finch, deceased, Ilene Grieb Ager, individually, and the two daughters (Elizabeth and Louise) of Edward C. Finch, deceased, were impleaded as defendants.

The two daughters, who joined in the objection of the trustee to payment of certain items, alleged by answer that their interpretation of the will denied to the executors of the estate of the deceased Mrs. Finch any right to receive "excess income" payments after the death of Mrs. Finch. In addition to alleging that excess income payments should continue to them as executors, the executors of the estate of the deceased Mrs. Finch claimed that Mrs. Finch's estate was entitled to reimbursement for emergency expenditures made by Mrs. Finch from August 21, 1937, to January 29, 1938. Ilene Grieb Ager, individually, claimed that she was entitled to $1,350 for her personal services to Mrs. Finch during her last illness.

The trustee replied that, as to claim of the executors for reimbursement for alleged emergency expenditures by Mrs. Finch, Mrs. Finch had been in funds from

regular payments to pay, and did pay, those items; and that Ilene Grieb Ager's individual claim, if any, was properly against the estate of Mrs. Finch, deceased, and not a charge against the trust estate of Edward C. Finch, deceased.

The trial court found that the excess income, computed for the period from January 1, 1937, to December 31, 1937, and allocated to Gladys Grieb Finch under the terms of the will, amounted to $5,495.28; that, prior to the death of Mrs. Finch, pursuant to the terms of the will, the trustee paid to Mrs. Finch, from the excess income account, $1,831.76; that, during 1937, as a result of her serious illness, Mrs. Finch paid for physicians, surgeons, and nursing, $612.75, for which Mrs. Finch did not at any time request the trustee to reimburse her; that, during the year 1938, Mrs. Finch paid for nursing services and medical treatment, $336.31.

The trial court entered judgment in favor of the executors of the estate of Gladys Grieb Finch, deceased, in the amount of $3,999.83. This comprises the items of 1937 excess income of $5,495.28, less $1,831.76 paid to Mrs. Finch in 1938, plus the 1937 expenditures of $612.75, and the 1938 disbursement of $336.31 made by Mrs. Finch as recited above. The claim of Mrs. Ager, individually, for $1,350 compensation for her services to Mrs. Finch was denied. Attorney's fees in the amount of $350 were allowed to trustee's counsel for their services in this action.

Plaintiff trustee and defendant Abrams and Travers appealed. Defendant executors and defendant Ager, individually, cross-appealed.

Counsel for appellants contend that, upon the death of Mrs. Finch, the remaining 1937 "excess income" computed January 15, 1938, was payable one-half thereof to each of the testator's two daughters, Eliza-

beth and Louise; and that the claim of the executors of the estate of the deceased Mrs. Finch for reimbursement for alleged emergency expenditures made by Mrs. Finch, are without merit under the provisions of paragraphs five and six of Article XIV of the will.

Counsel for cross-appellant executors argue that, under Article XIV of the will, either one-third of the income goes

"to the wife's estate until the death of her 'last survivor,' or else under said Article XIV there was an unlawful accumulation, no disposition of residue and remainder, and that said article was violative of the rules against lack of devisees capable of coming into court and claiming, uncertainties, ambiguities, indefiniteness and perpetuities, and that as to the residue and remainder the testator died intestate."

It follows, urges counsel for cross-appellant executors, that, if Mr. Finch died intestate, Mrs. Finch was entitled, under Rem. Rev. Stat., § 1341 [P. C. § 9847], to one-third of the real property, and, under Rem. Rev. Stat., § 1364 [P. C. § 9861], to one-half of the personal property.

■ We are mindful of the statutory injunction (Rem. Rev. Stat., § 1415 [P. C. § 10042]) that courts shall have due regard to the direction of the will and the true intent and meaning of the testator in construing the will, and sustain the testator's disposition of his property as manifested by his intent. *Cotton v. Bank of California*, 145 Wash. 503, 261 Pac. 104; *Johnson v. McClure*, 5 Wn. (2d) 123, 104 P. (2d) 962. The intent of the testator, as expressed in his will, must, as we said in *Cowles v. Matthews*, 197 Wash. 652, 86 P. (2d) 273,

". . . govern if not inconsistent with the rules of law. In order to determine the meaning and effect of any provision in a will, we must examine the writ-

ten instrument in its entirety to ascertain the true intent of the testator."

The testator's intention is clearly manifest from the whole will, and violates no rule of public policy or positive law, hence technical rules of construction are not necessary, nor may they be invoked to defeat such intention. 69 C. J. 67, 68.

The language of Article XIV of the will clearly expressed the intent of the testator to provide an income for the support of the beneficiaries named in the will during the period of the trust. There is no language in the will from which it may reasonably be inferred that the testator contemplated making the heirs, executors, and creditors of Mrs. Finch beneficiaries of his bounty.

The intention of the testator to dispose of his entire estate and to avoid intestacy, clearly appears from a reading of the will. The corpus of the estate is to remain intact during the lives of the wife, the brother, the two daughters, Elizabeth and Louise, and the children of his two daughters, Elizabeth and Louise, "born prior to my death." This is disclosed by the directions to the trustee to pay out all net income each year to the beneficiaries designated in paragraphs eleven to seventeen, inclusive, of Article XIV. The only exception present in the will appears in paragraphs two to six, inclusive, of Article XIV, to the effect that the wife's "regular payments," and "emergency payments," and the expenses of "last sickness," may, if the income from the trust estate is not sufficient, invade the corpus of the estate. The intention of the testator is made more pronounced by the language of paragraphs nineteen to twenty-one, inclusive, of Article XIV, which fix the date of termination of the trust, the distribution of the corpus, the identity of those to whom the estate is to be distributed, and by

the failure to provide for intermediate distribution of the corpus other than as stated above.

The whole of the income is distributed by *monthly* payments to designated beneficiaries. The provision in the will for "income periods," at the conclusion of each of which the net income for the preceding year is computed, and the excess income for the preceding year paid to the beneficiaries in twelve equal *monthly* installments, postpones payment of income for one year, to enable the trustee to determine whether there is any "excess income," after "regular payments," and "emergency payments," if any, to Mrs. Finch during the preceding "income period."

The wife was given priority of claim to "regular" payments of five hundred dollars *monthly,* and next in priority was the testator's brother, H. K. Finch, who died prior to the date of the decree of distribution in trust. If the brother had lived, he would, under paragraph eleven of Article XIV, have been entitled to receive out of the excess income for any income period the amount of twelve hundred dollars, and, if the excess income were less than twelve hundred dollars, then all of such excess income "shall be paid to my said brother, if he be then alive."

Paragraph ten of Article XIV provides that, if on the date of computation (January 15th of any year) it appears there is an excess income, the same shall be paid by the trustee to the beneficiaries entitled to receive the excess income thereafter in *monthly* installments as provided in paragraph eighteen of Article XIV. In the light of paragraph ten, the meaning of paragraph twelve, which provides that payments to the testator's brother shall terminate immediately upon his death, is too plain for argument. It was the intention of the testator that, if his brother died during the trust period, the payments for his account would

cease at his death, and neither his heirs nor legal representatives would have any right to continued payments.

With meticulous care, the testator specified in his will the beneficiaries of the income payments, the amount of the income payable to those beneficiaries, when and under what circumstances payments thereof shall cease, and to whom the payments of income shall thereafter be made. In each case, the payments of income cease upon the death of the beneficiary; and, in each case, provision was made by the testator for the identity of the succeeding beneficiary or beneficiaries.

Paragraph thirteen of Article XIV provides that, from and after the death of the last survivor of his wife and his brother, "all the net income of the trust estate computed as aforesaid shall be by the trustee paid" one-half to the testator's daughter, Elizabeth, and one-half to the testator's daughter, Louise. Upon the death of Mrs. Finch—the brother had previously died—paragraph thirteen became a very important part of the will. This paragraph speaks of "net" income rather than "excess" income for the reason that the death of Mrs. Finch concluded the duty of the trustee to make "regular payments" and/or "emergency payments" to Mrs. Finch, and the conditions, which prior to her decease necessitated computation of "excess income," existed no longer.

Paragraph thirteen is in harmony with the entire will. It is not in conflict with the provisions concerning the death of the other beneficiaries. It was not the purpose of the testator to give to any of the beneficiaries any vested interest in his estate. The language of the will is plain, and clearly directs the trustee to pay to the wife the regular payments of five hundred dollars *monthly* out of income currently and/or out of the corpus of the estate if the income is insufficient.

The trustee is clothed with discretion in the matter of making emergency payments to the wife currently. At the end of each year, the trustee is required to compute the income for that year, charge against it the previous regular and emergency payments to the wife, and then make *monthly* payments of "excess income," if any, to the designated beneficiaries.

Counsel for cross-appellant executors cite *Johnson v. McClure,* 5 Wn. (2d) 123, 104 P. (2d) 962, as sustaining authority, and argue that a personal annuity, given for a term of years or for the life of another, does not terminate with the death of the annuitant, but passes to the personal representatives of such annuitant; therefore, the annuity to the wife passed to her estate.

In *Kirwin v. Hall,* 169 Wash. 501, 14 P. (2d) 62, we held, under the provision of the husband's will, which bequeathed to the wife the net income of his estate and directed payment of it at regular monthly intervals during her life and also payment of her debts at her death out of the corpus of his estate, that the net income collected after the last monthly payment before her death, and sums that became due before her death, but collected thereafter, would not belong to her estate, but would fall into and remain part of the corpus of the trust; that hospital expenses incurred during her life were payable out of the wife's net income.

See, also, *In re Bunting's Estate,* 220 Iowa 186, 261 N. W. 922; *Equitable Trust Co. v. Jennings,* 189 Ill. App. 359, to the effect that income accruing to beneficiary before the death of the beneficiary does not go to the estate of the beneficiary.

Contrary to the general rule that personal annuity for stipulated time or life of another does not terminate at death of annuitant but passes to his personal representatives, it was held, in *Union Trust Co. v. Fisher,*

240 Mich. 68, 214 N. W. 941, under a will which provided for payment of annuity to a grandson during period of trust, that payment ceased on death of grandson without issue before termination of trust, in view of testator's intent, expressed in another provision of the will, that if said grandchild leave issue, the annuity of the deceased grandchild was to be paid by the testator's trustee to the issue of the deceased grandchild during the period of the trust; that

"There was no provision that the annuity to his son should, in the event of his death, be payable to his widow. There is no indication that he desired any part of his estate to go to one not of his issue except his wife. The provision for final distribution above referred to tends to support such a finding of intention on his part. He wanted his widow and his son and grandchildren to have all of the income of his estate so long as the widow and son, or the survivor of them, should live, and he then wanted his estate distributed as though he had died intestate."

It was held in *Snyder v. Heffner,* 33 Ohio App. 379, 169 N. W. 460, under provision in a will devising income from certain property to widow in annual payments, to begin one year after testator's death, executrix of widow, who died prior to expiration of such year, was not entitled to receive anything.

In *Walker v. First Trust & Savings Bank,* 12 F. (2d) 896, 75 A. L. R. 757, the question was presented whether a share of excess annual income payable to one of three daughters should, upon death of that daughter, go to the surviving daughter or to the children of the deceased daughter. The court said:

"It is clear from the wording of the will that there was no present gift to any one. The title to the whole estate was placed in the trustees, with direction to pay in the future. . . .

"It is also clear that the testator did not consider it certain that there would be each year excess annual

income. This is shown by the provisions of paragraph 7 of clause fourth, giving one of the annuities a preference in case the income was insufficient to pay all; also by the provision of paragraph 10 of clause fourth, making each year stand by itself for the purpose of determining the excess annual income."

To the same effect are *Green v. Bissell,* 79 Conn. 547, 65 Atl. 1056, 118 Am. St. 156, 8 L. R. A. (N. S.) 1011, and *Nading v. Elliott,* 137 Ind. 261, 36 N. E. 695. In none of the cases cited are the same testamentary provisions involved as in the case at bar; however, each was decided by the court upon the intention of the testator as determined by what he said in his will.

*Johnson v. McClure,* 5 Wn. (2d) 123, 104 P. (2d) 962, cited in support of the argument that, where an annuity is a first charge not only upon the income but upon the corpus of the estate, it is a legacy which does not lapse with death even though payment is postponed, does not sustain the position of cross-appellant executors.

In the case cited, the testator provided for payment of five hundred dollars annually to his wife during her life time, and the trustee was authorized, in the event that the income from the estate was insufficient to make the annual payments, to hypothecate the principal to make the payments. The testator directed that, upon the death of his wife, the real estate comprising the trust was to be sold, and the proceeds derived from the sale distributed to the testator's brother and two sisters, or their heirs. The testator died September 26, 1925. His wife died September 29, 1936. During this period of eleven years, the wife was entitled to receive eleven annual payments of five hundred dollars, or a total of fifty-five hundred dollars. During this time, the trustee paid to the testator's wife $1,975, from which it will be seen that, at the time of her death, the payments were in arrears $3,525.

After her death the trustee sold the real property comprising the trust and paid the proceeds into court, subject to the claims of the heirs of the testator and the heirs of the deceased wife. The trial court entered judgment awarding to the administrator of the estate of the deceased wife $3,525 against the fund paid into court. We held that it was clearly the intent of the testator to provide for the care of his widow by the payment of an annuity (which was a legacy in the broad sense of the term) of five hundred dollars "each and every year during the time of her life even though the total of the sums provided would exhaust the entire estate," which annual payments belonged to the widow and were payable at the end of each year from the time of the testator's death; that the legacy vested in the widow and did not lapse by her death, hence her heirs were entitled to the amount which was due at the time she died.

In the case at bar, the testator directed that regular payments of five hundred dollars monthly were to be paid by the trustee to Mrs. Finch. The testator further directed that the excess income was to be paid by the trustee monthly to the beneficiaries entitled to receive the same. Mrs. Finch received, up to the time of her death, all of the installments of the 1937 excess income and the regular monthly payments of five hundred dollars to which she was entitled.

There is not present, we reiterate, anywhere in the will, authority for the trustee to pay excess income to any person other than to the testator's widow, his brother, and his two daughters and the children of the two daughters living at the time of the death of the testator. There is not present any language in the will authorizing continuance of the regular payments monthly of five hundred dollars to the estate of Mrs. Finch, deceased.

■ Under the provisions of the will, the estate of the deceased Mrs. Finch is not entitled to reimbursement of amount of expenditures by Mrs. Finch, from August 21, 1937, to January 29, 1938, for nursing and medical attendance.

The 1937 items were not costs incident to the last illness of Mrs. Finch under the provisions of paragraph six. Under paragraph five, the trustee is vested with sole discretion in the matter of determining what additional amounts shall be paid to the wife for expenses of illness. Under paragraph six, the trustee's discretion as to payment of expenses of last sickness and funeral of Mrs. Finch is restricted to a determination by the trustee as to whether such expenses are "fair, reasonable and proper."

Plainly Mrs. Finch did not desire that the trustee reimburse her for the 1937 expenditures. It was her evident purpose to increase her excess income, to be calculated January 15, 1938, so that no deductions should be made by the trustee for emergency payments in 1937. Under paragraph five, there is no language which authorizes payment or reimbursement to the executors of the estate of Mrs. Finch, deceased, of the 1937 expenditures made by Mrs. Finch, inasmuch as she expressed her desire not to receive same. Had she elected to demand and receive payment of those items, the net income of the trust for 1937 would have been charged in that amount, and her excess income payable in 1938 would have been proportionately reduced.

Paragraph six provides that, upon the death of Mrs. Finch, if she had incurred any indebtedness for medical attendance and like items, which had not been paid prior to her death, the trustee would be required to pay such indebtedness if those expenses were fair, reasonable, and proper. Mrs. Finch did not request the trustee to reimburse her for payment of $336.31, from

January 1 to 29, 1938, for medical attendance and similar items. She did not die until three months after payment of the last item in January. On January 15, 1938, January 24, 1938, February 7, 1938, and March 4, 1938, the trustee paid, on request, for nursing, medical attention, and hospital services, a total of $644.18. In other words, Mrs. Finch determined which items of expense she desired the trustee to pay, and in each case the trustee complied with her request.

There is no record of denial of any demand made upon the trustee for money prior to the death of Mrs. Finch. It was only subsequent to her death that the claims were asserted. If the claims for reimbursement are within the terms of paragraph five, they were payable only to Mrs. Finch and not to her estate. It is certain that she would not have sought reimbursement from the trustee if she had lived. If the claims for reimbursement are covered by paragraph six, they do not constitute unpaid costs and expenses, as they were paid by Mrs. Finch, hence those claims are not payable now by the trustee.

The challenge of counsel for cross-appellant executors to the validity of the will, on the ground that its provisions violate the rule against perpetuities, is without substantial merit.

The will throughout reflects the intention of the testator that his wife, and not her heirs or legal representatives, should share in his estate or in the income from his estate. The obvious meaning of the words, "last survivor" of the testator's wife and brother, is the longer liver of the two persons named; that, from the time of the death of Mrs. Finch, all net income of the trust shall be paid in equal shares to the two daughters, including that "computed as aforesaid . . ." The brother predeceased the testator's wife, as previously stated.

Under paragraph nineteen of Article XIV of the will, the trust must terminate and the estate vest on the date on which occurs the death of the last survivor of the testator's wife, his brother, his two daughters, and the children of his two daughters born prior to his death. The testator described lives in being as of the time of his death, and provided for vesting of the estate at date of death of the last survivor, without regard to the additional twenty-one years permitted by the rule.

In other words, upon the death of the last survivor of those named as in being at time of the death of the testator, the trust terminates and the estate passes to the then living children of the daughters born after the death of the testator, and to their descendants. If the last survivor of the living line dies without living issue, paragraph twenty of Article XIV becomes operative, and provision is therein made for the selection of two charities by the trustee. The time of vesting of the estate, it matters not whom the beneficiaries may then be, is fixed as of the time of the death of the last survivor of named persons in being at the time of the death of the testator.

Counsel for cross-appellant executors argue that a gift to individuals and then over to a charity, is subject to the rule against perpetuities, and, if the limitation violates that rule, the second taker gets nothing. 5 R. C. L. 301, 302. That is, a gift in trust for a charity, conditioned on a future and uncertain event, is subject to the rule against perpetuities, and should the condition never be fulfilled or be so remote as to violate the rule against perpetuities, the gift fails.

The rule invoked by counsel for the executors is not applicable to the facts in the case at bar. The rule against perpetuities is clearly stated in 21 R. C. L. 282:

"The rule against perpetuities is usually stated as prohibiting the creation of future interests or estates which by possibility may not become vested within a life or lives in being and twenty-one years, together with the period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth."

The rule, however, applies only to the vesting of future estates and. does not apply to vested estates. Every future limitation of an estate is void as too remote, unless it is apparent that it must take effect and vest within the period allowed by the rule.

The power of appointment in paragraph twenty is valid. It is a special power exercisable only in favor of the class of charities designated. It is for a public charity under our statute (Rem. Rev. Stat. (Sup.), § 11218 [P. C. § 7029n-25], Laws of 1939, chapter 202, p. 709, § 11), which expressly includes as a charitable purpose the support or education of orphans or indigent children. See In re Planck's Estate, 150 Wash. 301, 272 Pac. 972, to the effect that a general charitable bequest, accompanied by full appointive power vested in a desig-· nated executor to name the beneficiaries, is valid and may be rendered effectual by the exercise of the power.

If the trustee exercises its power of appointment of two charitable institutions within the time prescribed· by the rule, the vesting will occur in time. It would be premature to pass at this time upon the validity of the power as violative of the rule against perpetuities. In re Warren, 320 Pa. 112, 182 Atl. 396, 104 A. L. R. 1345.

■ Respecting the claim of cross-appellant Ilene Grieb Ager, individually, for compensation for her services as nurse during nine months preceding the death of her sister, the record is bare of evidence that Mrs. Ager ever demanded compensation from Mrs. Finch. Mrs. Ager made no claim against the estate of her deceased sister. Mrs. Ager never presented any

claim to the trustee, nor did she ever disclose any intention to charge for her services until after the death of her sister. The trial court found that no agreement was ever, directly or indirectly, made between Mrs. Finch and Mrs. Ager for compensation for the services in question.

Mrs. Ager's claim against the trustee is in no better position than if it were a resisted claim against the estate of her deceased sister, which claim would be barred by the facts found by the trial court. In *Kremmel v. Schnaufer*, 4 Wn. (2d) 242, 103 P. (2d) 38, in which, as in the case at bar, there were no facts showing an implied contract or mutual understanding for compensation for services over a considerable period and no demand for payment was made during the life time of the person served, we quoted with approval the following language from the article on Executors and Administrators, in 24 C. J. at page 406:

" 'To establish a claim for services, proof of an express contract is not in all cases essential, but claimant must show either an express contract or an implied agreement or mutual understanding that the services were to be paid for, by clear and satisfactory proof; and where there is no express contract the facts showing an implied contract or mutual understanding must be fairly established. . . . Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period and no demand for compensation was ever made during decedent's lifetime, or where there are any circumstances connected with the claim tending to render it improbable or suspicious.' "

Unless authorized by paragraph five or paragraph six of Article XIV, there is no power in the trustee to pay Mrs. Ager's claim. Paragraph five did not require disbursements by Mrs. Finch, hence there is an absence of authority in that paragraph for payment. It is not

an unpaid expense of last sickness under paragraph six, which vested the trustee with discretion to pay it if such expense were fair, reasonable, and proper. The trustee should have refused to pay the claim. It should have been advised as such service was rendered or obligation incurred in order to enable it to guard against improper claims. Mrs. Ager's claim, "while unpaid," is not a cost or expense of last sickness, as, under the facts, it is neither an obligation of Mrs. Finch nor of the trust.

Our examination of all of the opinions and texts cited discloses that those authorities are either in harmony with what we have said or are not apposite. To review them would unnecessarily extend this opinion.

Cross-appellants are not entitled to anything from the trust estate; appellant daughters should be awarded all excess income, withheld pending this litigation, and the costs incurred by them herein; and counsel for appellant trustee are entitled to the fees allowed by the trial court. That is, the decree should be affirmed on the cross-appeals and reversed on the appeal, as indicated above. It is so ordered.

BLAKE, BEALS, SIMPSON, and JEFFERS, JJ., concur.