[No. 9126.  Department Two.   March 13, 1911.]

AARON ANDERSON, *Respondent*, v. W. S. OSBORN, *as Administrator de bonis non of the Estate of Anna O. Miller, Deceased, and* STATE OF WASHINGTON, *Intervener, Appellants.*[1]

APPEAL—PARTIES—DISMISSAL.  The appeal of an intervener cannot be dismissed on the ground that it is not a necessary or proper party, where it was brought in below as a necessary party defendant, and no exception or appeal was taken from the order bringing it in.

WORK AND LABOR —GRATUITOUS SERVICES— PRESUMPTION —EVIDENCE.  Where the deceased went to live with the plaintiff, taking the place of his sister as housekeeper, the presumption that mutual services rendered are a gratuity must be overcome by clear and convincing evidence of the initiatory contractual relation; and there is not sufficient evidence to submit the issue to the jury where it appears that the parties had lived together, rendering mutual services for thirty years, without any claim or recognition of indebtedness during the entire period; and statements to third persons, ten and fifteen years after the relation commenced, that deceased "would

[1]Reported in 114 Pac. 160.

pay him well" and had left all property to him, do not amount to a recognition of indebtedness.

APPEAL—REVIEW—VERDICTS. Where there is no evidence to sustain the verdict, it will be set aside on appeal.

Appeal from a judgment of the superior court for King county, Grimshaw, J., entered May 26, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on an implied contract. Reversed.

*Louis Nockels*, for appellant.

*T. D. Rockwell, J. E. Frost*, and *S. H. Chase*, for intervener.

*Bo Sweeney* and *Corwin A. Townsend*, for respondent.

MORRIS, J.—Respondent brought this action to recover for services rendered in the support, care, and maintenance of the deceased, for a period of thirty years preceding her death. The administrator *de bonis non* denied any liability in his answer, and the state, upon its petition, was permitted to intervene and file answer denying any liability upon the part of the estate. The issue was submitted to a jury, and verdict returned awarding respondent $5,500. Judgment being entered, the administrator and the state appeal.

Respondent moves to dismiss the appeal of the state, upon the ground that it is not a necessary or proper party, and that its intervention is without authority of law. This motion must be denied. The state was made a party by the order of the court below, and upon the entry of such order became a proper party in the action. No appeal having been taken by respondent from the entry of such order, the state is a proper party upon the appeal, and its appeal cannot be dismissed except for irregularity or jurisdictional matter subsequent to the judgment. Whoever is a necessary and proper party in the court below is a necessary and proper party upon the appeal, and upon the appeal no review of the order making additional parties can be had, except upon a proper exception and appeal from such order.

The error urged by appellants is the failure of the court below to grant a nonsuit and, at the close of the evidence, to instruct the jury to render a verdict in their behalf; both of which motions raise the same question and will be discussed together. It appears from the record that Anna O. Miller first became acquainted with respondent in 1878, at which time, upon the death of a sister who had been his housekeeper—he being a bachelor—she went to his home and continued to reside with him until her death in 1908, except for a short period when she was an inmate of the insane asylum. The theory of the action was that, during the time she lived with respondent, she was dependent upon him for support; that for the greater portion of that time she was an invalid requiring his constant care and attention. As might be expected, the evidence is conflicting, witnesses for respondent testifying to his care of Mrs. Miller, his payment of bills for household expenses and other services, while those for appellants show she was a hard-working woman, doing all the work of the household, attending to the garden, the cow, and the chickens, and in addition, for a portion of the time, acting as janitor in the Sullivan building. It is also shown that she accumulated some money from her outside service, which she invested in land and mortgages. Others testify that she paid for groceries and household supplies delivered at the home. Such a contradiction of facts is properly submitted to a jury, and the verdict should not be disturbed, providing we can find the necessary initiatory relation or contract to support the action.

The court below instructed the jury that, before they could find for respondent, they must find that, from the time Anna O. Miller came to live at his home, she intended to pay for her support and maintenance, and that the intention to charge and the intention to pay for such support and maintenance must have been in the minds of both parties. Such is unquestionably the law. When such a relation as we here find is assumed, there can be no recovery by either party un-

less there be a contract to charge for the services rendered by the one party, or a contract to pay for the support furnished by the other party. Otherwise it will be presumed that the relation was one of mutual benefit, and both the service and the support a gratuity. 18 Cyc. 410; *Butcher v. Geissenhainer*, 109 N. Y. Supp. 159. Not only must a contract be established, but the relation of the parties must have had its initiation in such a contract, when it is sought, as here, to support the cause of action upon the original relation.

"All contracts must be good or bad in their original creation, and must not depend on subsequent contingencies; that is, whether the party chose to make it a gift, or a charge at a future day or not. That it will never permit a friendly act, or such as was intended to be an act of kindness or benevolence, to be afterward converted into a pecuniary demand." *James v. O'Driscoll*, 2 Bay (Mo.) 101, 1 Am. Dec. 632.

The amount to be paid need not have been agreed upon, since the law can, by implication, supply a promise to pay, when it finds an agreement for the rendition of services. But the implied promise to pay must be based upon the agreement for service and not upon the performance of service, where, as here, there is shown to have been a mutual service. *Potter v. Carpenter*, 76 N. Y. 157.

There is a strong presumption in the law that in these cases such mutual service was intended as a gratuity, and such presumption cannot be overcome except by clear and convincing evidence. Carefully examining this record, we can find nothing that hints or points to any contract on the part of Mrs. Miller to pay for her support, nor any intention on the part of respondent to charge for such support. Mrs. Miller was without a home. Respondent had just lost his sister, who had been his housekeeper. It would have been of mutual benefit for Mrs. Miller to take the sister's place. That she was capable of rendering service is established by her accumulations of property from the earnings of such

service.    That she rendered service to respondent and was not indebted to him at the time of her death is apparent from the fact that there is no showing of any claim or recognition of indebtedness during the entire period of thirty years that these two people lived together.    The law looks with disfavor upon a claim made upon an estate under such circumstances, and will permit no recovery unless there is some evidence to establish the initiatory contractual relation.    The best that can be said of respondent's evidence in this connection is that subsequently to 1889, the date not being given—but as the witness did not know Mrs. Miller until 1889, it must have been subsequent to that time—Mrs. Miller in speaking of respondent to the witness, "said she would pay him well for what he done."    Again, in 1893, fifteen years after they first assumed their relation, Mrs. Miller told another relative of respondent "What she had was left to him."    Neither of these assertions could be magnified into a recognition of an understanding on the part of Mrs. Miller that she was indebted to respondent for her support since 1878.

"A claim against a decedent's estate should be supported by stronger evidence than admissions to third persons."    In re Weaver's Estate, 182 Pa. St. 349, 38 Atl. 12.

Respondent strongly urges that, inasmuch as the facts were submitted to a jury, we should not disturb their verdict. Such is our rule as to facts properly submitted to a jury, and if there was any evidence from which the jury could have followed the instructions of the court and found that an intention to charge and an intention to pay for services rendered was present in the minds of respondent and Mrs. Miller when she first went to his home, we would permit the verdict to remain as a finding upon a contested question of fact.    But where there was no evidence of such fact, the jury should not have been left to infer it, or to supply it from the evidence of the relation of these two persons, extending over a period of thirty years, without a single act

upon the part of either that would tend to establish such a contract. In *Butcher v. Geissenhainer, supra,* an action similar to this and where the evidence was much stronger in support of the claim, the court said:

"It may be granted that there was some evidence tending to establish the contract, and in an ordinary case enough to go to a jury. But the court of appeals has established the rule in this class of cases, the testimony must be not only clear and convincing, but of the clearest and most convincing character, and given or corroborated in all substantial particulars by disinterested witnesses, and it must follow that in order to take such a case to a jury more is required than will ordinarily suffice. Of course, no precise rule can be laid down for determining when such a question becomes one of fact, but the court must determine in the first instance whether the testimony is of the required character. . . . While it is true that a claim against a decedent's estate is as meritorious as any, a different rule of proof is required in cases which are justly the object of suspicion, easily fabricated, and with difficulty disproved. The plaintiff's case is burdened from the start with suspicion, and it must be considered by the court in determining whether there is a case for the jury. While it is true that it is the province of the jury to weigh the testimony, preliminary to that the court must determine as matter of law whether the rule of proof required has been complied with."

This is a strong statement of the rule, and we do not have to go as far in holding that respondent had made no sufficient proof to take his case to the jury. The case is cited as showing the tendency of the courts to deny a recovery in these cases, unless there is reliable and convincing proof upon which to base it. Appellants' motion for instructed verdict should have been granted.

The judgment is reversed, and the cause remanded with instructions to dismiss.

DUNBAR, C. J., CHADWICK, and CROW, JJ., concur.