[No. 30615. Department One. December 17, 1948.]

LEO S. ROSS, *Respondent*, v. FAYE MAXINE RAYMER, *as Executrix, Appellant.*[1]

[1] Reported in 201 P. (2d) 129.

*Dodd & Russell*, for appellant.

*Griffin & Griffin*, for respondent.

STEINERT, J.—This was an action to recover for services alleged to have been performed and for expenses alleged to have been incurred and paid by the plaintiff for the benefit of a person, now deceased, whose estate is presently being administered by the executrix, named as defendant in the suit.

The complaint alleged that, during the period between November 30, 1942, and April 2, 1943, while the decedent, Alice Faye Boyce, was alive and was acting as the personal representative of J. A. Boyce, deceased, plaintiff rendered certain services and incurred certain expenses, all at the special instance and request of Alice Faye Boyce; that such

services consisted of consultations had with Alice Faye Boyce, and advice given and other acts of assistance performed for her benefit in connection with the administration and management of the estate and property of her deceased husband, J. A. Boyce; and that such services and expenses were of the reasonable and agreed value of five hundred dollars, which amount Alice Faye Boyce had promised and agreed to pay.

The defendant answered, denying all of the foregoing allegations, but admitting all other averments of the complaint, which recited that no part of the claimed amount had been paid, that a verified claim was served on the defendant executrix on November 23, 1945, and that, on December 4, 1945, the claim was rejected.

The cause was tried to the court without a jury, and, at the conclusion of plaintiff's evidence, defendant interposed a challenge to its sufficiency and moved for an order of dismissal. The challenge was overruled and the motion was denied, whereupon the defendant, through her attorney, stated to the court that she had no evidence to present.

After argument by counsel, followed by submission of the cause for decision, the court rendered a memorandum opinion announcing that it would find that plaintiff had rendered services at the special instance and request of the decedent, Alice Faye Boyce; that such services, exclusive of the item of expenses incurred, were of the value of four hundred dollars; but that plaintiff's expenses would not be allowed, because they had not been itemized as requested by the decedent in her lifetime, and had not been established in the trial of the case.

Defendant's motion for judgment notwithstanding the memorandum opinion or, in the alternative, for a new trial, and her motion for a reconsideration of the court's ruling on the alternative motion were both denied, and thereafter, on motion of plaintiff, the court entered findings, conclusions, and a judgment awarding plaintiff the sum of five hundred dollars, rather than four hundred dollars, upon the theory of an implied promise on the part of the decedent,

Alice Faye Boyce, to pay the reasonable value of the services rendered. Defendant appealed.

The theory of an express promise to pay for the services, alleged in the complaint, has been abandoned, and the only question now before us is whether an implied promise to pay therefor was established by that degree of proof which is required in such cases.

The facts in the case are to be gleaned from the evidence supplied by the testimony of respondent's witnesses and certain correspondence introduced as exhibits in connection with that testimony.

Respondent, Leo S. Ross, is a resident of Seattle and has, for some thirty to forty years past, been engaged in business in that city and elsewhere as a general contractor, estimator, and appraiser. Three years of that period, about and around the year 1915, he spent in Butte, Montana, where he conducted a general contracting business. In that capacity, respondent had frequent business relations with one Max Van House, an architect residing in that city. Mr. Van House at that time was the husband of the decedent Alice Faye Boyce. Through Mr. Van House, respondent became acquainted with Mrs. Van House.

A few years later, after both the respondent and the Van Houses had moved to Seattle, they renewed their acquaintance. Throughout the years since then, respondent and Mr. Van House have collaborated in business matters, both of them being engaged in construction work, and they still render assistance to each other from time to time. These business relations led to social relations between the two families.

It appears that sometime after moving to Seattle, Mr. and Mrs. Van House ceased to be husband and wife. The exact time of, and the reason for, their separation does not appear in the record. It further appears that sometime after their separation, the exact time again not being shown, Mrs. Van House became the wife of J. A. Boyce and thereafter was known as Alice Faye Boyce. It seems that Mr. Boyce formerly conducted a seed store in Seattle, and that respondent became acquainted with him in a social way dur-

ing this period, in about the year 1920. Mr. Boyce subsequently established the J. A. Boyce Seed Company in Mount Vernon, in which city the Boyces thenceforth maintained their home. After 1925, respondent did not see Mrs. Boyce very often. We surmise that this was probably due to the fact that Mrs. Boyce and her second husband were then living in Mount Vernon. The friendship between them, however, seems to have continued as before.

J. A. Boyce died in the late summer of 1942. The condition of Mr. Boyce's business at the time of his death constituted the precipitating factor leading to the performance of the services for which respondent now seeks to be compensated. The business at that time included the seed store in Mount Vernon, wherein eight or ten persons were employed, and also a branch store in Junction City, Oregon. The affairs of the seed company had become quite involved, requiring a reorganization, and its books were in a "chaotic" condition.

Mrs. Boyce had no business training or experience and was unable alone to cope with the situation imposed upon her by reason of her husband's death. Under these circumstances, she availed herself of the aid and advice which respondent, her long time friend, was competent to give. The record does not make it clear whether respondent first volunteered his counsel and aid, or whether Mrs. Boyce initially sought him out and requested his assistance. The facts, as disclosed by the evidence, are, however, that respondent did render considerable assistance to Mrs. Boyce for a number of months and that such assistance proved to be of value to her.

Without going too much into detail, it may be said that the assistance rendered by respondent consisted of procuring a new manager for the business; advertising for other help; consulting with the new manager and with Mrs. Boyce in Mount Vernon or at the home of Mr. Ross in Seattle, or by long distance telephone; consulting with an attorney in Mount Vernon and with the Oregon branch manager; making two trips to Everett, Washington; and exchanging letters with the principal manager with respect to the business.

The extent of these services is given in some detail by respondent in a letter subsequently written by him and sent to Mrs. Boyce; the contents of that letter will be quoted a little later herein.

In addition to his general claim for services rendered, respondent also sought to recover for expenses incurred by him in the alleged amount of $82.45. As stated above, the court disallowed the claim for expenses paid, because respondent had not presented an itemized statement thereof to Mrs. Boyce in her lifetime, as she had requested; nor did he present any itemized claim at the trial. Since no error is alleged by respondent upon the refusal of the court to allow reimbursement for such expenses, that factor is out of the case on this appeal.

We are not disposed to disagree with the trial court's findings that services were actually performed by the respondent and that such services were reasonably worth five hundred dollars. The question in this case, however, is whether the evidence heretofore related and that which is about to be related present a situation from which the law applicable in such cases will imply a promise to pay the reasonable value of the services performed. More specifically, the crucial question is whether the evidence in the case is of such character and weight that it can be inferred that, at the time the services were being performed, the respondent intended to charge for them and Mrs. Boyce intended to pay for them.

Upon that subject, two letters, introduced in evidence during the testimony given by the respondent, seem to us to present the true situation, and for that reason we quote them in full. Both of these letters were written at least seven months after the services had been completed. The first letter, written by respondent to Mrs. Boyce, who was then living in Seattle, reads as follows:

134

"LEO S. ROSS CONSTRUCTION CO.
"4554 - Thackeray Place                Phone: Melrose 8706
                                       Seattle, Washington
"Mrs. Alice Boyce                      November 8, 1943
"1450 E. Republican St.
"Seattle, Washington
"My Dear Alice:-

"It is nearly eight months since our last long session with your Oregon Manager and six months since you called me and asked for a statement. I thought I should hear from you again before this, but as you have not called, I am left with the comforting thought that you are getting along satisfactorily and have no further need for my time.

"From conversations with Mr. Whitney [then manager of the Mount Vernon seed company], I gather that the business is doing well and that most of the unpleasantness that permeated the premises before I was drawn into your affairs, has been abated. I trust that you are still satisfied with my selection and recommendation of Mr. Whitney as your Manager.

"When I recollect all the long winded sessions we had and the bitterness and unpleasantness I faced in stepping into your troubles at your request to help you steady your badly rocking boat; the sessions with Richard and the others who quit or were discharged; the meetings with Mr. Smith, your attorney, prospective employees and disgruntled employees and etc. and etc., *I am forced to agree with you* that it was a business proposition and that I should therefore present my statement for services rendered. And especially since all the time which I devoted to your affairs was a distraction from my own at a time when I could least afford it. I should not want to go through the unpleasantness such as that of the day I dismissed Richard for you for twice the amount set forth below.

"In case you have forgotten, I am listing some of the sessions and interviews held with you and for you.

"Session with Alice Boyce                Seattle
"     "      "     "                       "
"     "      "     " & Richard            Mt. Vernon
"     "      "     " and Hansen           Seattle
Interview with prospective bookkeeper     Seattle
Session with Alice Boyce                  Seattle
"     "      "     "                       "
Conference with Mr. Smith and dis-
   charge of Richard                      Mt. Vernon

| | |
|---|---|
| Interview with another prospective bookkeeper | Seattle |
| Conference with Alice Boyce, Rudy Olson et al | Mt. Vernon |
| Conference with Mr. Whitney and Hansen | Seattle |
| "        "        "        " | Mt. Vernon |
| "        "     Alice Boyce | Seattle |
| "        "     Mr. Whitney | Seattle |
| "        "     Mr. Smith et al | Mt. Vernon |
| Session with Oregon Manager afternoon and evening meeting | Seattle |
| Conference with J. H. Whitney | Seattle |
| Repeated the above several times | Seattle |

"In addition there were many telephone calls and impromptu sessions.

"To out-of-pocket expense for 5 trips to Mt. Vernon with automobile, long distance calls, telegram to California in regard to prospective bookkeeper, classified Ad for office man, etc.                         $ 82.45

"To services rendered, including above items of expense, as quoted to you in April                         $500.00

"Yours very truly,

"Copy to J. H. Whitney            Leo S. Ross
"Mt. Vernon                        Leo S. Ross" (Italics ours.)

To that letter Mrs. Boyce replied as follows:

"Leo S. Ross,                        1450 East Republican,
"4554 Thackeray Place,               Seattle 2, Washington,
"Seattle, Washington.                November 23rd, 1943.
"Dear Leo:

"Your letter reached me last week, the day before Mr. Whitney and I drove to Eugene, Oregon. I had no time to answer it before my return.

"I talked this matter over with Mr. Whitney and while I have no desire to draw him into this controversy, it seems to be necessary to quote him in answering your letter of November 8th, 1943.

"When you and Hazel first called on me in Mount Vernon you offered as a friend to advise me and invited me to call at your home some Sunday afternoon when I was spending the week end with Faye [appellant executrix herein]. Again you offered to advise and help me in any way you could and due to our friendship, it never occurred to me that you intended to present a bill for advice nor was anything of that character mentioned.

"Later, when things became more involved, and I felt the need of friendly advice from one who understood the personal side of the situation, I turned to you again, at which time I expressed my willingness to pay for your *expenses*. You so roundly criticised others who were taking advantage of me, that I certainly did not expect to be charged for the advice *you were trying to give me*.

"You have an item of 'out-of-pocket' money of $82.45, and I am at a loss to understand how you arrived at that figure for Mr. Whitney says he paid your hotel bills in Mount Vernon. I remember paying for one dinner at least, and the long distance calls came collect to Mount Vernon. You will also recall that when you did come to Mount Vernon you always stopped at Payne Field to attend to your own business. The only things I can think of, is one telegram to California and one add in the paper which you paid for. I understood from you that you were not busy at the time you talked with me. I found out since that you talked with Mr. Whitney at several times without my knowledge, but since you told me you were doing Mr. Whitney a favor in putting him in touch with a paying job, it never entered my head, nor did you intimate that you intended to charge me for such things, and I understood you that when you suggested Mr. Whitney as manager of my business that his salmon business was folding up, while as a matter of fact, Mr. Whitney has recently bought a cannery in Alaska and I believe he contemplates going up there in the spring.

"I do not question that you were trying to help me, but feel that should I have followed the advice on the handling of the business and making the sale of the same to yourself, that I would have seriously jeopardized my interest.

"I certainly want to pay any just bills, but cannot bring myself to believe that I have become indebted to you according to your letter or otherwise. I felt that I should write you answering your letter and see if you do not recall the situation as I have outlined it. I did not turn over the matter to my attorney for answer because of the past friendly relations between yourself, wife and myself.

"Should you not feel in accord with my statements in this letter then perhaps it would be best for you to itemize your expense account and due to our friendship I would rather pay your *expenses* than have you feel that I have taken advantage of you.     Very truly yours,
                    "Alice Boyce" (Italics ours.)

So far as the record discloses, respondent never answered Mrs. Boyce's letter, never gave her an itemized statement of his alleged expenses, as requested by her, never consulted with her personally concerning his claim, and never in the lifetime of Mrs. Boyce made any further attempt or took any additional steps to collect the amount which he asserted to be owing to him.

Mrs. Boyce died September 14, 1945, almost two years after the above correspondence took place. After the appellant herein had been appointed executrix of Mrs. Boyce's estate and had qualified as such, respondent served and filed his claim against the estate for the reasonable value of the services alleged to have been rendered to Mrs. Boyce.

At the trial of this case, the only witness, other than respondent himself, was Mr. Joseph H. Whitney, the man who, at the suggestion and instance of respondent, had been hired as manager of the J. A. Boyce Seed Company shortly after Mr. Boyce's death. Mr. Whitney, called as a witness for the respondent, testified that, after Mrs. Boyce received the letter from respondent in November, 1943, she discussed the matter with Whitney, and stated that, while she thought respondent's claim was excessive, she nevertheless intended to pay him for his services, although she did not indicate when she would do so.

We turn now to the law applicable to the case. The theory upon which the present action was tried and decided in the superior court was that of an implied contract to pay the reasonable value of services performed.

A true implied contract, or contract implied in fact, is an agreement which depends for its existence on some act or conduct of the party sought to be charged, and arises by inference or implication from circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention on the part of the parties to contract with each other. *Troyer v. Fox*, 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132; *McKevitt v. Golden Age Breweries, Inc.*, 14 Wn. (2d) 50, 126 P. (2d) 1077; *Kellogg v. Gleeson*, 27 Wn. (2d) 501, 178 P. (2d) 969; *Ammerman v. Old Nat. Bank*, 28 Wn. (2d) 239, 182 P. (2d)

138

75; 12 Am. Jur. 498 *et seq.*, Contracts, §§ 4, 5; 17 C. J. S. 318, 319, Contracts, § 4(b).

In each of the first three cases cited in the preceding paragraph, we quoted with approval the following language taken from *Western Oil Refining Co. v. Underwood,* 83 Ind. App. 488, 149 N. E. 85:

"A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances, and not from their words, either spoken or written. *Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds.* Such a contract differs from an express contract only in the mode of proof." (Italics ours.)

▮ It is the accepted doctrine in this state that an essential element of an implied contract under which recovery is sought for services rendered or material furnished is that it must appear from the evidence that the services were rendered or the materials furnished under such circumstances as to indicate that the person rendering or furnishing them did so with the expectation that he would be paid therefor, and that the party for whom they were rendered or furnished then expected, or should have expected, to pay for them. *Anderson v. Osborn,* 62 Wash. 400, 114 Pac. 160; *Kremmel v. Schnaufer,* 4 Wn. (2d) 242, 103 P. (2d) 38; *Kellogg v. Gleeson, supra; Ammerman v. Old Nat. Bank, supra.* Accord: *Bank of California v. Ager,* 7 Wn. (2d) 179, 109 P. (2d) 548; *Fineson v. McMahon,* 12 Wn. (2d) 41, 120 P. (2d) 482.

In the case of *Kellogg v. Gleeson, supra,* which was an action to recover for labor and materials on the theory of an implied contract, we said:

"One of the essential elements in the establishment of an implied contract in a case such as this, where recovery is sought for the value of work or materials furnished, is that it must appear that the services were rendered or the materials furnished under such circumstances as to indicate that the person furnishing the same expected that he would be paid therefor by the party sought to be charged, and that the latter expected or should have expected to pay for the same. 71 C. J. 41, § 6:

" 'To recover for work and labor on the theory of an implied contract it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation that they would be paid for, by the person sought to be charged, and that the person sought to be charged knew that the services were being performed with the expectation that he would pay for the same, and the law will not imply a promise to pay for services contrary to the intention of the parties, as where it is obvious that there was no intent on the part of either party that payment should be made, although, if the recipient of services should, as a reasonable man, have understood that the performer expected compensation, the actual belief of the recipient as to such matter is immaterial.' "

In the recent case of *Ammerman v. Old Nat. Bank, supra,* wherein it was sought to recover the reasonable value of extra services rendered to a person since deceased, on the theory of an implied contract, this court reviewed many of the earlier cases and in the course of its opinion said:

"We can agree with the last-cited case [*Sowash v. Emerson,* 32 Cal. App. 13, 161 Pac. 1018] in so far as it states that no express agreement is necessary; but we are unable to agree that it is the law in this state that the mere furnishing of the extra and dissimilar service by the employee, and the acceptance of such service by the master or employer, is sufficient to establish an implied contract upon which a recovery may be had, for we stated in *Kremmel v. Schnaufer,* 4 Wn. (2d) 242, 103 P. (2d) 38, in referring to the case of *Anderson v. Osborn,* 62 Wash. 400, 114 Pac. 160:

" 'The court clearly indicated in the opinion that a contract will not be implied in such a case from the mere fact that services were performed, but that there must be evidence from which it can be inferred that, *while the services were being performed, the plaintiff* [the performer] *intended to charge and the defendant* [the recipient] *intended to pay.*' "

The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential thereto, including the existence of a mutual intention. *Kellogg v. Gleeson, supra.*

Where one seeks to establish a claim against an estate for services rendered to the deceased during his or

her lifetime, the party asserting the claim has the burden of proving a contract, express or implied, to pay for the services; and the evidence to support such claim must be clear, cogent, and convincing. *In re Masterson's Estate,* 108 Wash. 307, 183 Pac. 93; *Kremmel v. Schnaufer, supra; Fineson v. McMahon, supra.*

In *Ammerman v. Old Nat. Bank, supra,* on the subject of the degree of proof required in an action brought against an estate for services rendered to the deceased, we said:

"A reading of the cases hereinbefore cited will show that, under the rules announced by this court, the degree of proof required to establish a claim for services under an original contract, be it express or implied, is no different from that necessary to establish a claim for additional and different services. However, in the latter case, where the one performing the service accepts the payments agreed to under the original contract, there is a presumption that he accepts them in full payment for all services *In both cases mentioned, the proof must be of the clearest and most convincing character.*" (Italics ours.)

Tested by the rules hereinabove stated, the facts in the instant case will not, in our opinion, support a recovery by the respondent on the theory of an implied-in-fact promise to pay for the services rendered. The circumstances under which the services were performed most naturally imply, not that the parties intended to enter into a contractual relation, but that respondent originally tendered his advice and aid to Mrs. Boyce as a friend of long standing, with no expectation of claiming compensation therefor, and that he first decided to make a charge for his services seven or eight months after the need for his help had ceased; further, that Mrs. Boyce never expected, nor had reason to expect, that respondent was performing the services under an expectation of being paid therefor. This conclusion is fortified by the fact that respondent, after being definitely informed by Mrs. Boyce of her position in the matter, took no steps whatever to collect or establish his claim during the lifetime of Mrs. Boyce, but waited two years, and then, after her death, filed a claim against her

estate. Respondent has not met the burden of proving an implied contract by evidence that is clear, cogent, and convincing.

The judgment is reversed, with direction to dismiss the action.

MALLERY, C. J., BEALS, JEFFERS, and HILL, JJ., concur.

*Curtis H. Coons*, for respondent.

[1]Reported in 200 P. (2d) 975.