**A.R.A. MANUFACTURING CO.,**
**Plaintiff-Appellee,**

v.

**Stanley L. COHEN and Gary N. Sneider,**
**Defendants-Appellants,**

**Central Music Distributing Co.,**
**Inc., Defendant.**

**No. 79CA0918.**

Colorado Court of Appeals,
Div. I.

June 3, 1982.

Rehearing Denied July 1, 1982.

Certiorari Denied Nov. 22, 1982.

Holland & Hart, R.K. Rufner, R. Brooke Jackson, Denver, for plaintiff-appellee.

Miles & McManus, Richard G. McManus, Stanley Ereckson, Jr., Denver, for defendants-appellants.

COYTE, Judge.

Defendants Stanley L. Cohen and Gary M. Sneider appeal from a judgment entered on a jury verdict entered against them. We reverse.

Plaintiff, A.R.A. Manufacturing Co., (A.R.A.) filed suit against Central Music Distributing Co., Inc., (Central) and the individual defendants to collect a corporate account allegedly due and owing. A.R.A. contends that the individual defendants were personally liable for payment of the debt because they had given either an oral or implied guaranty of the account. Central filed for bankruptcy and all proceedings against it were stayed. Cohen and Sneider deny that they had personally guaranteed the payment of the account in any manner. They also raised the defense of the statute of frauds.

The evidence revealed that defendants Cohen and Sneider were the principal shareholders in Central. In November 1975 Cohen met with representatives of A.R.A. to obtain Denver distributorship rights for A.R.A. products. At that time Cohen applied to A.R.A. for an open line of credit for Central and at that time personal financial statements of Cohen and Sneider were submitted.

The credit was approved, and in January 1976, A.R.A. made the first shipment to the defendants. Payment for this shipment was due in 90 days. After 90 days had elapsed, payment had not been made. During the next four months, A.R.A. continued to ship merchandise on credit to Central although no payments had been made.

Eventually, A.R.A. stopped extending any further credit to Central and demanded payment of the account. In October 1976 A.R.A. obtained a writ of attachment and seized Central's inventory. This writ of attachment was subsequently dissolved.

The individual defendants first contend that the trial court erred in denying their motion for a directed verdict, thereby improperly allowing the jury to consider whether they gave a personal guaranty of the corporate debt. We agree.

The individual defendants first argue, and we agree, that no implied personal guaranty was created by their submission of a personal financial statement in support of their credit application.

■ Implied contracts arise from conduct of the parties which evidences a mutual intention to contract with each other; however, there must be a meeting of the minds before any contract will be implied. *Stice v. Peterson,* 144 Colo. 219, 355 P.2d 948 (1960); *Ross v. Raymer,* 32 Wash.2d 128, 201 P.2d 129 (1948). Since a guaranty is a specialized type of contract, mutual assent and consideration must exist before an implied guaranty may be found in the acts of the parties. *Timi v. Prescott State Bank,* 220 Kan. 377, 553 P.2d 315 (1976). Furthermore, guaranty agreements, as distinguished from ordinary contracts are to be strictly construed and are not to be extended by implication beyond the express terms of the instrument or the plain intent of the parties. *Gandy v. Park National Bank,* —— Colo. ——, 615 P.2d 20 (1980); *Burkhardt v. Bank of America,* 127 Colo. 251, 256 P.2d 234 (1953).

■ Here, the only evidence introduced by A.R.A. to prove that an implied personal guaranty had been given by the individual defendants was the personal financial statements submitted by them at the time they filed a credit application with A.R.A. A.R.A. credit manager, who had not met the individual defendants at that time, testified that he believed, solely on the basis of their submission of personal financial statements, that they would personally guaran-

tee the payment of the corporate account. The individual defendants, however, testified that at no time did they intend these financial statements to be personal guarantees of Central's obligations.

The record is thus totally devoid of any evidence of mutual assent. Without some indication to the individual defendants prior to the execution of the contract that a personal guaranty was expected, they cannot be held to have given an implied guaranty on the basis of nothing more than the furnishing of a personal financial statement along with a credit application for Central Music. *Northern State Construction Co. v. Robbins,* 76 Wash.2d 357, 457 P.2d 187 (1969). A.R.A.'s credit manager's personal belief as to the individual defendants' intentions in giving personal financial statements is insufficient, as a matter of law, to hold them personally liable as guarantors. *See Miller v. Walter,* 165 Mont. 221, 527 P.2d 240 (1970).

The individual defendants next contend that they gave no oral guaranty. A.R.A., however, contends that in the course of numerous telephone conversations the individual defendants promised personally to guarantee the corporate account. The substance of the conversations was testified to by A.R.A.'s credit manager, McGowan, as follows: In May 1976, another employee of the company went to Denver to inquire about the status of Central's account which was approximately two months delinquent at the time. He was told by defendant Cohen that: "You will get your money, just don't get excited about it." In subsequent conversations McGowan testified that Cohen used words of similar import. Later in the summer, McGowan testified that during a conversation with defendant Sneider he was told that "they" would send $10,000 a month to bring the account up to date.

In August, McGowan was told by the president of A.R.A. that he needed to make some arrangements to get Central's account paid. At that time, McGowan testified he stopped extending credit to Central and began shipping all merchandise on a C.O.D. basis. He also testified that he told defend-

ant Cohen at that time that he wanted to get a signed guaranty of the account. He testified that Cohen said he would guarantee the account. However, in September, when McGowan brought the guaranty papers in for the defendants to sign, both individual defendants refused to sign a personal guaranty, and Cohen stated that when he said he would give a personal guaranty he intended it to be in his corporate capacity, not his individual capacity.

Cross-examination of McGowan established that he had been aware from the beginning of the individual defendants' positions as officers of the corporation. McGowan further testified that before he approved the line of credit for Central, he had reviewed a Dunn & Bradstreet credit report on the corporation. This report clearly established both a favorable credit rating and Central's corporate status. He also testified on cross-examination that all payments were made out of the corporate account and never out of the individual accounts of defendants. At no time prior to the extension of credit did McGowan testify that he had received any sort of oral guaranty from the individual defendants.

Another witness for A.R.A. testified that at no time did either of the defendants personally guarantee the account. In sum, the total evidence introduced by A.R.A. as to an oral guaranty of the account was that A.R.A.'s credit manager believed that the foregoing statements by the individual defendants as to payment of the account amounted to a personal guaranty. This evidence is, however, insufficient as a matter of law to establish the mutual assent necessary for the establishment of any enforceable contract. *Ross v. Raymer, supra.*

McGowan, although he may have subjectively believed that the individual defendants would guarantee the account, did not communicate that belief to them until the very end of the relationship, and at that time he was informed that any guaranty would be made only in their corporate capacity. Furthermore, since A.R.A. stopped extending credit to Central in August 1976 and made all shipments on a C.O.D. basis, it clearly did not believe that the individual defendants would stand behind the corporate account.

Hence, as the record was totally devoid of any evidence to sustain a finding that the individual defendants were personally liable for payment of Central's account based upon an oral guaranty, the trial court erred in allowing the jury to consider the question of whether there was a personal guaranty of the account. *See Safeway Stores, Inc. v. Langdon,* 187 Colo. 425, 532 P.2d 337 (1975). Therefore, since the jury's verdict cannot be sustained on the basis of either an oral or an implied guaranty, its verdict must be reversed as to the defendants' individual liability.

The individual defendants next contend that the trial court erred in dismissing their counterclaim for damages. We disagree.

The counterclaim in question was based on the alleged dimunition in value of the individual defendants' stock in Central by virtue of A.R.A.'s wrongful attachment of Central's assets.

■ Where a corporation is harmed by some action of a third party, the right to seek redress for that wrong belongs to the corporation. *Box v. Roberts,* 112 Colo. 234, 148 P.2d 810 (1944); *see Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3rd Cir.1970). Since the wrong is to the corporation, the shareholders cannot recover separately for the indirect harm to their stock. *Kauffman v. Dreyfus Fund, Inc., supra; Box v. Roberts, supra.*

■ Here, as any loss caused by the wrongful attachment of assets was a loss to Central itself, any cause of action belongs to Central and, in this instance, to the trustee in bankruptcy of Central. The individual defendants, therefore, cannot assert damages arising from the indirect harm to the value of their stock.

In view of the conclusion we have reached that the individual defendants did not guarantee the corporate account, it is unnecessary to consider their statute of frauds defense.

The judgment is affirmed as to the dismissal of the counterclaim and is reversed as to the finding that the individual defendants were personally liable on the corporate account.

VAN CISE and TURSI, JJ., concur.