IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARK WHITMORE, | ) | |
| | ) | No. 36863-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZANE LARSEN, individually, | ) | UNPUBLISHED OPINION |
| AFFORDABLE ADVANCE | ) | |
| AUTOCARE, a Washington Limited | ) | |
| Liability Company, d/b/a EVERGREEN | ) | |
| TIRE, and OCCUPANTS, | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, J. — Zane Larsen appeals the findings, conclusions, and judgment

entered following a bench trial, finding him liable for unlawful detainer and imposing

damages, attorney fees and costs totaling $165,680.40. We reverse and remand with

directions to dismiss the unlawful detainer claim.

FACTS AND PROCEDURAL BACKGROUND

For over 25 years, Charles Chambers owned and operated an automotive and tire business in Pullman. The business operated out of a large commercial building that was owned by Dorothy Martin at the time Mr. Chambers bought the business. Ms. Martin leased the ground on which the building was located. When Ms. Martin died in 1997 or 1998, Mr. Chambers and his wife bought the building and entered into ground leases of their own. Most of the building and other business premises were located on a former railroad right-of-way that the Chamberses leased from the Washington State Department of Transportation (DOT).

The Chamberses had a second ground lease that addressed an historical encroachment. After the commercial building was constructed in 1950 by Widmer & Widmer Roofing Specialists, Inc., Maybelle Keiser, who owned adjoining land to the east,[1] brought a quiet title action and, in October 1962, established title to land that extended a little over 10 feet under Widmer's building. Widmer dealt with the problem of its encroachment by signing a lease effective November 1, 1962, under which it agreed to pay $100 per year to lease a roughly 10 x 250 foot strip of Ms. Keiser's land. Ms.

---

[1] The boundaries of the Widmer and Chambers business premises appear to run SSW to NNE and WNW to ESE rather than north to south and east to west. In discussing spatial relationships at trial the parties referred more simply (albeit less exactly) to locations being to the east, west, north, or south. So do we.

Keiser continued to charge only $100 per year rental to Widmer and its assignee for the next 24 years.

By the time Ms. Martin acquired the building in 1987, Mr. Whitmore's parents had acquired Ms. Keiser's property interests. Beginning with Ms. Martin's acquisition of the building in 1987, Mr. Whitmore's parents, succeeded to by a Whitmore Family Trust and thereafter by Mr. Whitmore (collectively "the Whitmores"), substantially raised the rent payable for the strip of land being used by the automotive/tire business. The lease with Ms. Martin extended the leased strip of land by another 194 by 10 feet, yet it increased the rent from only $100 per year to $700 per month—amounting to $8,400 per year.

During Mr. Chamber's ownership and operation of the automotive/tire business, a gravel road or driveway that the Whitmores claimed to own ran along the eastern boundary of his leased property and continued to the north, where it ended in a turnaround at a grain elevator owned by the Whitmores. Ms. Martin's and the Chamberses' leases with the Whitmores allowed them to make nonexclusive use of the road/driveway. (The Martin lease described it as a "private road" while the Chambers lease described it as a "common driveway." Ex. P12, at 2; Ex. P14, at 4.) Among other users of the road/driveway were the Whitmores, their grain elevator lessees, and recreational vehicle owners to whom the Whitmores would rent space on football

3

weekends. The Chambers lease in effect in 2014 required the Chamberses to repair, maintain, grade and gravel the road/driveway annually.

In August 2014, Mr. Chambers announced his intention to sell the automotive/tire business and retire, and Zane Larsen expressed interest in acquiring it. Mr. Larsen entered into an agreement to purchase the business and building in October 2014 that was subject to contingencies.[2] The purchase did not close until April 2016, but Mr. Larsen began operating the business in November 2014, "to get [his] feet under [him]," and in light of Mr. Chamber's intention to retire. Report of Proceedings (RP) at 201-02.

In the late summer or fall of 2014, Mr. Chambers informed Mr. Whitmore that he would not renew the ground lease for Mr. Whitmore's encroached-upon land, whose three-year term would end on January 31, 2015. He informed Mr. Whitmore that Mr. Larsen would be buying the business and Mr. Larsen and Mr. Whitmore would need to negotiate their own lease. On February 10, 2015, Mr. Chambers wrote Mr. Whitmore a confirming letter, which reads:

> I am writing you to confirm that our rental contract has ended as of January 31st, and as you know, because of health reasons, I have sold the business to Zane Larsen. I recommend that you contact Mr. Larsen and work out the rental agreement with him as soon as possible.

Ex. P15.

---

[2] The purchase was made by Mr. Larsen and his limited liability company, Affordable Advance Autocare, which is also an appellant. For simplicity, we refer only to Mr. Larsen.

It is undisputed that Mr. Larsen and Mr. Whitmore thereafter unsuccessfully engaged in negotiations toward a lease. Mr. Whitmore would later testify that he tried to negotiate a lease with Mr. Larsen "[m]ultiple times" but Mr. Larsen "refused every term that we've tried to put together." RP at 52, 55. When Mr. Larsen finally presented a proposed written lease, Mr. Whitmore refused to sign it.

For his part, Mr. Larsen claims the negotiations stalled when he discovered "red flags." RP at 204. One was that Mr. Whitmore could not provide a satisfactory survey of the proposed leasehold. Mr. Larsen also learned that the gravel road that Mr. Whitmore claimed to own had formerly been Kaylor Road, a public road, and Ms. Keiser had not named the city of Pullman or any other governmental agency as a party in her quiet title action. He ultimately came to doubt that Mr. Whitmore owned the land underneath and adjacent to his building and refused to negotiate further until he could resolve his concerns.

In June 2015, Mr. Whitmore served a three-day notice to pay rent or vacate on Mr. Larsen. The notice asserted that past due rent of $7,500 was owed and if not paid, Mr. Whitmore would file an unlawful detainer action under RCW 59.12.030(3). The rent was not paid, and the following week Mr. Whitmore filed the action below.

Mr. Whitmore's complaint for unlawful detainer alleged that Mr. Larsen was Mr. Whitmore's tenant under "a month to month lease" under which Mr. Larsen owed $1,500

5

per month, for a total of $7,500. Clerk's Papers (CP) at 3. Implicit was that the last rent paid was for the month of January 2015, the last month of the Chambers lease (or so the parties believed). In answering the complaint, Mr. Larsen denied that he and Mr. Whitmore had a lease agreement and alleged that Mr. Whitmore did not own the property that was the subject matter of the Chambers lease.

At a show cause hearing that took place in August 2015 the trial court observed, "This is obviously very complicated and this is very typical when you have boundary disputes." CP at 298. It expressed concern that the parties had provided no briefing. It told the parties that despite its uncertainty, "I'm going to go ahead and give you a decision here today," explaining that it could take the matter under advisement, but "I could probably spend 40 or 50 hours doing independent research . . . and [it] would still be a difficult issue to determine." CP at 298-99.

The trial court found by a preponderance of the evidence that Mr. Larsen's building was located on a portion, "perhaps a small portion," of Mr. Whitmore's property. CP at 301. It found rent owed would be based on the $1,080 per month it understood was payable under the Chambers lease, not the $1,500 per month to which Mr. Whitmore claimed to be entitled beginning on February 1, 2015. It ruled that Mr. Whitmore was entitled to a writ of restitution but declined to issue one because it did not know what it would order the sheriff to do. Observing that Mr. Larsen was leasing a large portion of the property under the building from DOT, it stated, "Does that mean

6

vacate, don't use a portion of the building[?] Does that mean take the building off that portion of the property[?] I don't know." CP at 302.

Over a year passed before Mr. Whitmore took further action, moving for summary judgment in November 2016. For the first time, he claimed that Mr. Larsen was bound by the Chambers lease for an additional three years (through January 2018) because the lease contained an automatic renewal provision and Mr. Chambers did not timely cancel in writing. Never before had Mr. Whitmore asserted that Mr. Larsen could be held to the Chambers lease. Mr. Chambers would later testify, and even Mr. Whitmore would agree, that they were unaware of the automatic renewal provision when Mr. Chambers gave verbal and written notice of nonrenewal in October 2014 and February 2015. Mr. Whitmore's motion was denied on the basis that there were factual disputes over whether Mr. Larsen's building was located on Mr. Whitmore's property.

Almost another year passed before the parties filed cross motions for summary judgment. Mr. Larsen argued the case was improperly being maintained as an unlawful detainer action and should be dismissed, with Mr. Whitmore free to bring an ejectment action. Mr. Whitmore responded that the action was properly brought under RCW 59.12.030(3) because either the Chambers lease continued or there was an implied lease under which Mr. Larsen owed the rent demanded by Mr. Whitmore. For the most part, the trial court denied both motions for summary judgment, but it did reject Mr. Larsen's argument that Mr. Whitmore was not entitled to proceed under RCW 59.12.030(3). It

7

ruled that Mr. Whitmore had "presented sufficient facts to proceed in this unlawful detainer claim pursuant to RCW 59.12.030(3)." CP at 284.

In April 2019, almost four years after Mr. Whitmore filed his unlawful detainer action, the parties proceeded to a two-day bench trial. The trial court allowed them to try the issue of title, despite it being an unlawful detainer action. It heard their dispute over whether Mr. Larsen and Mr. Whitmore were parties to a lease. Mr. Larsen contended that if any rent or rent-based damages were payable, it would be only reasonable rent, and he presented evidence of the rent he and Mr. Whitmore were paying to DOT for their identically-sized and adjacent ground leases. Copies of the parties' leases then in place with DOT were admitted as exhibits D113 and D119. Included as an appendix to this opinion are depictions of the leased areas from surveys that were prepared in December 2016 and are attached to exhibits D113 and D119.

The left depiction in the appendix shows, with cross hatches, the portion of the right-of-way DOT leases to Mr. Larsen. The right depiction shows, with cross hatches, the portion of the right-of-way it leases to Mr. Whitmore. Mr. Larsen's commercial building (the larger of two structures, the other being a shed) is depicted on both surveys, somewhat more clearly in the right depiction.

The exhibits and testimony established that Mr. Larsen and Mr. Whitmore lease adjacent 16,527 square foot parcels of ground from DOT. Both lessees pay annual, not monthly, rent to DOT of $1,760.48. The roughly 10 foot by 444 foot strip of ground

8

leased from Mr. Whitmore under the Chambers lease would be roughly 27 percent of the area each party leases from DOT. If the rental rate the parties paid to DOT at the time of trial was a reasonable amount, then reasonable rent for the entire 4,440 square feet of ground that the Whitmores leased to Ms. Martin and the Chamberses would be $475.33 a year.

The trial court found in favor of Mr. Whitmore. It did not specify the rental agreement on which it based its conclusion that Mr. Whitmore was entitled to pursue his claim for unlawful detainer, finding only that Mr. Larsen wrongfully occupied the premises "on a month to month basis and/or pursuant to a lease agreement that has not expired and/or by an implied lease." CP at 514. It fixed Mr. Larsen's liability for unpaid rent at $1,080.50 per month based on the Chambers lease, doubled it pursuant to the unlawful detainer statute, and awarded reasonable attorney fees and costs based on the attorney fee provision in the Chambers lease. Judgment was entered in the total amount of $165,680.40.

Substantially adopting Mr. Whitmore's proposal for a writ of restitution, the trial court ordered that a writ be issued to the sheriff of Whitman County directing him to "deliver possession of the premises" to Mr. Whitmore either

> A. By allowing the erection of a fence commencing from the northern boundary of Stadium Way at its intersection with the east right of way line of the rail road; thence, along the east right of way line to the south end of Defendants main building; thence continuing east along the south end to Defendants main building to its southeast corner; thence along the east side

9

of Defendants main building, to the northeast corner of said main building;
thence returning along the north end of Defendants main building to the
east right of way line of the rail road; thence following the east right of way
line to the Whitmore gate; or

B.      By removal of the encroaching building from the premises.

CP at 518; *compare* CP at 412. Mr. Larsen obtained a stay of the judgment and writ and

appeals.

ANALYSIS

Mr. Larsen makes 13 assignments of error on appeal, 9 of which are assignments

of error to the trial court's findings following the bench trial. We find his challenge to

the trial court's pretrial ruling that the case could proceed as an unlawful detainer action

under RCW 59.12.030(3) to be dispositive.

We first address why RCW 59.12.030(3) does not provide a basis for Mr.

Whitmore's action. We then address Mr. Larsen's argument that Mr. Whitmore's action

should have been converted to an ejectment action.

A.      RCW 59.12.030(3) does not apply

"Unlawful detainer actions are statutorily created summary proceedings, primarily

designed for the purpose of hastening recovery of possession of real property." *MacRae*

*v. Way*, 64 Wn.2d 544, 546, 392 P.2d 827 (1964). They are an alternative, when the

statutory elements are met, to the more expensive and lengthy common law action of

ejectment. *FPA Crescent Assocs., LLC v. Jamie's LLC*, 190 Wn. App. 666, 675, 360

P.3d 934 (2015) (citing *Hous. Auth. of City of Everett v. Terry*, 114 Wn.2d 558, 563, 789

10

P.2d 745 (1990)). In such proceedings the superior court sits as a special statutory tribunal, limited to deciding the primary issue of right to possession together with the statutorily designated incidents thereto, i.e., restitution and rent or damages. It does not sit as a court of general civil jurisdiction. *MacRae*, 64 Wn.2d at 546. The unlawful detainer statute is in derogation of the common law and requires strict compliance. *FPA Crescent*, 190 Wn. App. at 675.

RCW 59.12.030(3), under which Mr. Whitmore proceeded, applies to a "tenant of real property for a term less than life" who continues in possession "after a default in the payment of rent" and after a written notice, properly served, remains uncomplied with for three days. A different provision, RCW 59.12.030(6), applies when a "person" not a "tenant" enters upon land of another without permission of the owner and without having color of title, and fails or refuses to remove therefrom after three days' notice.

Mr. Whitmore did not have an express lease with Mr. Larsen. It is undisputed that the Chambers lease was never assigned to Mr. Larsen. As far as the parties knew (until Mr. Whitmore discovered otherwise in November 2016) the Chambers lease expired without renewal on January 31, 2015. And the Chambers lease required that any assignment would require Mr. Whitmore's written consent, which was never given or even requested.

Mr. Whitmore contends that by buying and taking possession of Mr. Chamber's building and business assets Mr. Larsen automatically assumed the Chambers lease, but

this is at odds with fundamental contract law and no supporting legal authority is provided. It is well settled that when no authorities are cited in support of a proposition advanced on appeal, we are not required to search for supporting law but may assume that counsel, after diligent search, has found none. *See, e.g.*, *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962); *and cf. Lake Union Realty Co. v. Woolfield*, 119 Wash. 331, 332, 205 P. 14 (1922) (rejecting a business purchaser's argument that he stepped into his seller's lease).[3]

It is undisputed that Mr. Larsen and Mr. Whitmore never reached any oral agreement on replacement lease terms. As Mr. Whitmore himself testified, he tried to negotiate a lease with Mr. Larsen "multiple times" but Mr. Larsen "refused every term that we've tried to put together." RP at 52, 55.

Mr. Whitmore argues that an implied lease existed, but his concept of an implied lease is that because Mr. Larsen acquired the Chamberses' building, the trial court could imply a lease between Mr. Larsen and Mr. Whitmore having all of the Chambers lease terms. Yet an implied contract "depend[s] for its existence on some act or conduct of the

---

[3] *Lake Union*, a case that Mr. Whitmore relies on for its recognition that a lease can be implied, rejected this notion of automatic assignment. In *Lake Union*, a manager who purchased his employer's business sought to hold the landlord to a favorable lease under which his employer had paid below-market rent. The court rejected the argument because the manager had not been a party to that lease. The fact that the manager acquired his employer's business and made some of his employer's rent payments was deemed irrelevant.

party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other." *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957). "[T]he mutual assent of the parties must be gleaned from their outward manifestations." *Weiss v. Lonnquist*, 153 Wn. App. 502, 511, 224 P.3d 787 (2009). The burden of proving the existence of an implied contract is on the party asserting its existence. *Id.* Among the essential facts that the party asserting the existence of an implied contract is the existence of a mutual intention. *Ross v. Raymer*, 32 Wn.2d 128, 139, 201 P.2d 129 (1948) (citing *Kellogg v. Gleeson*, 27 Wn.2d 501, 178 P.2d 969 (1947)).

Washington cases have found an "implied tenant" liable for unlawful detainer, but they have not implied a lease of the sort urged by Mr. Whitmore and they have not found implied leases in cases brought under RCW 59.12.030(3) or one of its predecessor provisions. When Washington cases have found an implied tenancy, it has been in cases brought under RCW 59.12.030(6), or one of its predecessor provisions, against a person who has entered on the owner's land without permission, without color of title, who, by failing to remove himself of herself after written notice, is required to pay reasonable rent.

For example, in *Bellevue Square Managers, Inc. v. GRS Clothing, Inc.*, 124 Wn. App. 238, 245, 98 P.3d 498 (2004), where the lessee, GRS, entered into an invalid assignment and moved out, this court held that it still remained the "tenant." Its

13

attempted assignee, who moved into the commercial premises and was in possession when notice was served, was held liable for unlawful detainer not as a tenant, but as a person who had entered premises without permission under RCW 59.12.030(6).

In *Lake Union*, the defendant's liability for unlawful detainer was based on a trial court finding that "without permission of the respondent, and without . . . any color of title[, the appellant] entered the premises." 119 Wash. at 332. The court held the possessor of the premises liable on alternative grounds, one being that he could be deemed a tenant by sufferance and required to pay reasonable rent. Implicitly, it found the rent amount being demanded by the owner of the premises was reasonable.

The *Lake Union* court relied on *Williamson v. Hallett*, 108 Wash. 176, 182 P. 940 (1919), in which Williamson and his partner, lessees and sublessors of property being operated as a hotel, brought an action for unlawful detainer against Hallett who, without any agreement with them, had assumed possession of the hotel. The partners' subtenant had been purchasing the hotel's furnishings from Hallett but defaulted in the payments. After declaring a forfeiture of the sales contract, Hallett took possession of not only her furniture, but also the hotel. Having been found liable for unlawful detainer, Hallett complained on appeal that she could not be sued for unlawful detainer because there was no proof of a conventional landlord-tenant relationship between her, Williamson, and his partner. The Supreme Court pointed out that under the statute then in effect, "'[w]henever any person obtains possession of premises without the consent of the owner

14

or other person having the right to give said possession, he shall be *deemed* a tenant by sufferance merely, and shall be liable to pay reasonable rent.'" *Id.* at 179 (emphasis added) (quoting Rem. 1915 Code § 8805).

Finally, in *Reichlin v. First National Bank in Montesano*, the Supreme Court held that in an action for unlawful detainer against a defendant keeping cattle on plaintiff's land without an express agreement, an "implied promise to pay rent [came] into being" and the jury was correctly instructed that "the plaintiff is entitled to recover only the fair rental value of the premises for the period that the defendant occupied said premises." 184 Wash. 304, 309-10, 51 P.2d 380 (1935).

In all of these implied tenancy cases, recovery was not had under a predecessor provision to RCW 59.12.030(3) or RCW 59.12.030(3) itself. Recovery was had, instead, under RCW 59.12.030(6) or one of its predecessor provisions.

Reasonably construed, subsections (1) through (5) of RCW 59.12.030 provide remedies against actual, not implied, tenants. They apply to "tenant[s] of real property for a term less than life." *Id.* Only actual tenants are "tenant[s] . . . for a term." RCW 59.12.030(3) applies to tenants who have committed "a default in the payment of rent" and who are provided with a three-day notice "any time after the rent becomes due." A "[d]efault" is an "omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." BLACK'S LAW DICTIONARY 526 (11th ed. 2019). Only

15

actual tenants have "due" dates for paying their rent and commit a "default"—a failure to perform a contractual duty—by failing to pay on time.

RCW 59.12.030(6), by contrast, applies to "persons" who occupy premises without permission and without color of title. Washington cases have consistently treated implied tenants as falling within this category of "persons."

"When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.2d 885 (2007). And "[u]nder rules of statutory construction 'no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error.'" *In re Det. of Strand*, 167 Wn.2d 180, 189, 217 P.3d 1159 (2009) (quoting *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991)). "Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature." *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). An important consequence of the legislature's different remedies available against "tenants" versus implied tenants as "persons" is that an owner may recover rent contractually due from a tenant, but can seek only reasonable rent from an implied tenant.

Mr. Whitmore could not proceed under RCW 59.12.030(3) because Mr. Larsen was not a "tenant" who was "in default" in payment of rent. Mr. Larsen arguably was a person who had entered Mr. Whitmore's land without permission or color of title and

16

who refused to remove himself following three days' notice. But there is no basis for

construing Mr. Whitmore's presentation at trial as relying in the alternative on RCW

59.12.030(6).[4] He relied for his remedy entirely on prior lease agreements. He presented

no evidence of the extent to which—apart from the commercial building—Mr. Larsen

_____

[4] We question but do not decide whether an unlawful detainer action that complains of an encroachment that will be difficult to remove falls within the primary purpose of an unlawful detainer action. The primary purpose of an unlawful detainer proceeding is to hasten recovery of possession. *MacRae*, 64 Wn.2d at 546. The first alternative in the writ of restitution entered by the trial court—that the sheriff erect a fence that wraps around the encroaching part of Mr. Larsen's building—does not fully restore possession. The second—that the sheriff remove the encroaching part of the building—is a remedy that many sheriffs and courts have concluded cannot be carried out. *See, e.g.*, *Dundalk Holding Co. v. Easter*, 215 Md. 549, 552, 137 A.2d 667 (1958) (writ of possession was returned by sheriff, stating he could not execute the writ as commanded because it would require him to enter land he could not enter); *Cutrona v. Columbus Theater Inc.*, 107 N.J. Eq. 281, 282, 151 A. 467 (Ch. 1930) (remedy at law for theater's 2.5 by 100 foot encroachment was inadequate because the sheriff could not put the property owner in possession); *Hirschberg v. Flusser*, 87 N.J. Eq. 588, 590, 101 A. 191 (Ch. 1917) (sheriff refused to remove encroaching wall); *Blake v. McCarthy*, 115 N.Y.S. 1014, 1015 (Sup. Ct. 1909) (removal of encroaching building could not be accomplished by execution, which would impose a risk of damage upon the sheriff that he is not bound to incur in an execution); *Davis v. Westphal*, 389 Mont. 251, 262, 405 P.3d 73 (2017) (questioning whether Montana law would permit issuance of a writ of possession that commanded a sheriff to enter real property and affirmatively remove a trespassing encroachment).

As explained by the Wisconsin Supreme Court many years ago, the solution is a mandatory injunction (a remedy not provided by chapter 59.12 RCW):

> It is not reasonable to ask a sheriff to remove the invading portion of that wall or foundation, as he is guilty of trespass if in doing so he invades by a hair line the property of the defendant. The proceeding is as delicate and impracticable as the taking of the pound of flesh. The responsibility of removing the wall should, in justice, be left to the party who built it, and this the remedy of mandatory injunction does.

*Fisher v. Goodman*, 205 Wis. 286, 237 N.W. 93, 95 (1931).

had entered premises described by the Chambers lease. He disputed that "reasonable" rent should be the measure of his damages.

On the matter of "reasonable" ground rent, only Mr. Larsen presented evidence—what appears to be quite relevant evidence—that applying the rental rate both parties were paying to DOT, a reasonable rent for all the Whitmore property let by the Chambers lease was $475.33 per year.[5] Ms. Martin and the Chamberses paid more to the Whitmores, but they were *getting* more than the occupancy and use for which rent is paid. By having a lease, they were getting the Whitmores' forbearance from bringing an ejectment action that might require them to remove the alleged encroachment. Mr. Larsen chose not to agree to an above-market rent that would buy him forbearance, recognizing that by not having a lease he could be sued for ejectment.

The trial court erred in ruling that the action could proceed under RCW 59.12.030(3).

> **B.    We are not persuaded that the trial court should have converted the action to one for ejectment**

We are not persuaded by Mr. Larsen's argument that Mr. Whitmore's action should have been converted by the trial court to an action for ejectment. Mr. Larsen

---

[5] Mr. Whitmore occasionally pointed out that the Chambers lease also provided for ingress and egress. No evidence was offered as to the use Mr. Larsen made of the gravel road/driveway, the reasonable value of his nonexclusive use, and whether Mr. Larsen had an offsetting claim for maintaining, grading, or graveling it.

relies in part on RCW 59.16.030, which provides that if a defendant in an action under that chapter denies the plaintiff's ownership and states facts showing he has a lawful claim to possession, the case shall proceed as if it were an action under the ejectment provisions presently codified in chapter 7.28 RCW. But his briefing includes no argument, nor did counsel adequately explain at oral argument, why we should apply a provision from chapter 59.16 RCW that has no parallel in chapter 59.12 RCW.

Mr. Larsen also likens this case to *Bar K Land Co. v. Webb*, 72 Wn. App. 380, 864 P.2d 435 (1993) and similar cases, in which an agreement that is nominally a lease is found in substance to be a purchase agreement, under which the nominal "tenant" has paid more than rent and/or made valuable improvements. *Bar K* holds that an unlawful detainer action cannot be maintained against someone who is purchasing, not renting, property. The fact that Webb, the property purchaser, would be able to recover the value of her property improvements in an ejectment action was a *consequence* of the fact that Bar K could not sue her for unlawful detainer. It was not this court's *reason* for holding that Bar K could not sue her for unlawful detainer.

Mr. Whitmore presumably has a claim for ejectment, but a continuing encroachment by an adjoiner upon the land of another by erecting and maintaining a building thereon without right might also be the basis for a claim for trespass or nuisance. *See* 1 AM. JUR. 2D *Adjoining Landowners* § 112. Other than holding that Mr. Whitmore

19

fails to meet the requirements of RCW 59.12.030(3), we decline to dictate to Mr. Whitmore the form that any future action by him must take.

We reverse the trial court's findings of fact and conclusions of law, its judgment, and the writ of restitution issued pursuant to the judgment, and remand with directions to dismiss the unlawful detainer action.[6]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.

---

[6] Citing RAP 18.1 and the Chambers lease, Mr. Whitmore requests an award of attorney fees on appeal. The lease does not apply to Mr. Larsen and Mr. Whitmore is not the prevailing party. The request is denied.

APPENDIX



*See* Ex. D113, Ex. A; Ex. D119, Ex. A.